BYERS ET AL. V. ROLLINS ET AL.

CORPORATIONS — OFFICERS — RIGHTS OF STOCKHOLDERS.

1. ACTION AGAINST OFFICERS OF A CORPORATION FOR AN ACCOUNT —
WHEN CORPORATION MUST BE MADE A DEFENDANT.— Where offi-
cers of a corporation have assets in their possession belonging to
the corporation, the corporation and not the stockholders is the
proper party to bring an action to compel them to account, unless
it is made to appear that it is necessary for the stockholders to
bring the action in order to prevent a complete failure of justice.
In the latter case the corporation must be made a party defendant.

2. ACTION BY STOCKHOLDERS TO OUST OFFICERS — HOW REGULARITY
OF THEIR ELECTION MAY BE SHOWN.— In an action by stockhold-
ers against the officers of the corporation to oust the latter from
office, the plaintiffs claimed that the capital stock had been illegally
increased. It appeared that defendants were the legal officers
prior to a meeting of stockholders in 1885, and had managed the
affairs of the corporation since its creation. At the meeting in
1885 defendants received votes representing not only a majority of
the capital stock after the increase, but also a majority of the orig-
inal issue. *Held,* that the officers were legally elected.

3. UNAUTHORIZED INCREASE OF THE CAPITAL STOCK OF A CORPORA-
TION DOES NOT INVALIDATE THE ORIGINAL STOCK.— In an action
by certain stockholders against the officers and other stockholders
of a bridge corporation to cancel all the stock held by defendants,
it appeared that the cost of the bridge was estimated at $3,000, and
that the capital stock was limited to this amount, equal to sixty
shares. The actual cost was $7,000, and to provide for the differ-
ence the stock was increased to the latter amount. No *mala fides*
on defendants' part was shown, and the only irregularity consisted
in the failure to have the articles of incorporation amended so as
to permit the increased issue. Plaintiffs alleged that they pur-
chased the certificate of a stockholder on his representation that
the certificate was for all the capital stock, and that they purchased
after having examined the articles in the secretary of state's office,
showing that sixty shares was the entire stock. It appeared that
defendants had a majority of the original capital stock, and plaint-
iffs obtained a majority of the increased issue. *Held,* that the sub-
sequent issue did not invalidate the original issue of stock, and, as
cancellation of all the stock in defendants' hands was alone sought,
such cancellation was properly refused.

4. WHEN PURCHASERS OF THE STOCK OF A CORPORATION PUT ON
INQUIRY.— It appeared that, at the time of the purchase of the
certificate by plaintiffs, it was well known that the principal de-

fendants were the managers and directors, and had been such managers and directors since the corporation's organization, and that plaintiffs purchased with knowledge of such facts, and the further fact that under the law none but stockholders could be directors of a corporation. The certificate which plaintiffs purchased was not under the seal of the company, and was not signed by its president. *Held*, that plaintiffs were put on inquiry, and reasonable inquiry would have disclosed the condition of affairs as shown by the books of the corporation; and that, under this aspect of the case, plaintiffs were not entitled to a decree of cancellation.

*Error to District Court of Arapahoe County.*

THE action was commenced in February, 1887, by William N. Byers, A. D. Bullis, Lewis B. France and David J. Ball, as plaintiffs, against John Q. A. Rollins, Lewis C. Gaskill, Frederick T. Gooch, Frank Fisher and William M. Clark, as defendants.

It appears from the pleadings and the agreed statement of facts upon which the case was tried below that the defendant Rollins and others incorporated the Grand River Bridge Company with a capital of $3,000, divided into sixty shares of $50 each. The articles of incorporation were filed in the office of the secretary of state and in the office of the county clerk of Grand county, but not in the office of the county clerk of Clear Creek county, the latter being one of the counties in which the business of the company was to be transacted. It is agreed that the capital stock of the company was originally fixed at $3,000, this amount at the time being deemed sufficient to cover the cost of the bridge; and it is also admitted that the actual cost of the bridge was over $7,000, and that it was necessary to increase the capital stock to meet such cost. At a meeting of the stockholders held in 1875, at which all the stock was represented, it was unanimously voted to increase the stock to $7,000, and such increase was in fact made, and the additional stock sold, although no amendment to the original articles of incor-

poration was made providing for such increase. From November 17, 1874, to the time of bringing the action, defendants Rollins and Gaskill have been the president and secretary, respectively, of the said company. From date of organization till January 17, 1885, Rollins, Gaskill and Gooch collected the tolls, and had the general management and control of the affairs of said company, Fisher and Clark being each entitled to a small amount of the stock, but taking no part in the management. No certificates of stock were in fact issued, but the secretary issued certificates showing that certain persons were entitled to their respective shares of stock when issued; and in the agreed statement such certificates are referred to as stock, and are so designated in the argument of counsel and in the opinion of the court. These certificates bore no statements concerning the amount of the capital stock. Such a certificate was issued to one W. H. Cushman; and Byers claims that Cushman represented that his certificate was for all of the capital stock of the company, and that he believed Cushman, and bought the certificate of him after having examined the articles on file in the secretary of state's office, showing that sixty shares was the entire capital stock.

Defendants deny that Cushman sold the stock to Byers, and it is agreed that Gaskill, the secretary, if on the stand as a witness, would produce the original certificate to Cushman, and would swear that the order thereon, to issue a new certificate to Byers, is made and signed by Thomas Guanella, and that a certificate was issued by the secretary to Byers upon such order, and not upon any order from Cushman. It is agreed that the certificate issued was not signed by the president or under the seal of the company, and that it was issued without any order having been made therefor by the board of directors, and it is admitted that it was notorious that Rollins, Gaskill and Gooch had been the managers and directors of the company since its organization, and Byers knew

thereof before he bought the stock, and that he was aware of the law requiring such officers to be selected from among the stockholders. Byers claims not to have known that the capital stock had been increased, and claims that he supposed that he was buying all the stock. Some of this stock Byers assigned to his co-plaintiffs. Due notice thereof having been given, a stockholders' meeting was held January 17, 1885, at which meeting stock was held and represented as follows: Rollins, fifty-two shares; Gooch, ten shares; Fisher, ten shares; Gaskill, two shares; Ball, two shares; Clark, four shares; Byers, sixty shares. At that meeting Rollins and associates claimed the capital stock to be $7,000, or one hundred and forty shares, of which they held a majority; and it is conceded that the said Rollins and associates owned and voted at said meeting thirty-four shares of the original capital stock and forty shares of the increased stock. After the secretary had announced the names of the stockholders and the shares held by each, and after the voting for directors had recommenced, plaintiffs present withdrew from the meeting and held a separate meeting without giving public notice. At this meeting of Byers and associates the plaintiffs were elected directors, and claimed the offices. Byers was chosen president and Bullis secretary of their board.

At the other meeting, held at the time and place designated in the call, the defendants were, by such meeting, elected directors of the company, each receiving thirty-four votes of original stock and forty votes of increased stock. After the meeting Rollins was chosen president, and Gaskill secretary; and Rollins and Gaskill still have possession of the books and property of the said company, and claim the offices. The stock claimed by plaintiffs consists of twenty original shares and forty shares of increased stock. At the time Byers claims to have bought the Cushman stock the books of the company showed the above facts, and also showed that Clark had

four shares, and D. J. Ball two shares, of the original stock; and these facts were accessible to Byers on the examination of the books of the company, at that time in the principal office of the company at Georgetown.

The Grand River Bridge Company was not made a party to the action. Upon the final hearing, the court below entered judgment dismissing the action; and to reverse this judgment the case is brought here upon error.

Mr. W. T. HUGHES, for plaintiffs in error.

Mr. R. H. GILMORE, for defendants in error Rollins, Gaskill, Gooch and Fisher.

Mr. L. C. ROCKWELL, for defendant in error Clark.

MR. JUSTICE HAYT delivered the opinion of the court.

This action was brought in the court below to compel an accounting by the defendants, as officers of the Grand River Bridge Company, to oust the defendants from office, and to obtain a decree for the cancellation of all the stock held by the defendants or either of them.

If the defendants have assets in their possession belonging to the corporation, the corporation, and not the stockholders, is the proper party to bring an action to compel them to account for such assets. It is well settled that whenever the officers of a corporation misappropriate the corporate funds, or are guilty of any kind of wrongful dealing with the corporate property, the corporation is primarily interested, and can alone seek redress, unless it is made to appear that it is necessary for the stockholders to bring the action in order to prevent a complete failure of justice; and, to bring a case within the exception, it must be made to appear that the corporation refuses to bring a suit, or permit the same to be brought in the corporate name after reasonable application has been made to it for that purpose; or facts

must be alleged showing that it would be useless to make such an application, as when the wrong-doing defendants constitute the board of directors of the company, or a majority of them, or that the directors, or a majority of them, are still under the control of the defendants, charged with the wrongful conduct, so that it is apparent that a demand would be unavailing; and in every such case it is indispensably necessary that the corporation should be made a party defendant, for the reason that the relief, when granted, belongs to the corporation and not to the stockholder, although, of course, he may be indirectly benefited by the result of the action.    3 Pom. Eq. Jur. § 1088 *et seq.; Dodge v. Woolsey*, 18 How. 331, 345; *Davenport v. Dows*, 18 Wall. 626; *Jackson v. Ludeling*, 21 Wall. 616; *Newby v. Railroad Co.* 1 Sawy. 63; *Heath v. Railroad Co.* 8 Blatch. 347.

The corporation known as the Grand River Bridge Company not having been made a party plaintiff or defendant, the trial court correctly decided that an accounting could not be ordered.    Neither were the plaintiffs entitled to a decree ousting the defendants from office under the agreed statement of facts, even if it be conceded that the title to their offices could be determined in this proceeding, upon which question no opinion need be expressed.    It is shown that the only defendants claiming the offices were legal officers prior to and up to the time of the meeting held upon January 17, 1885, and that they have been managing the affairs of the corporation since its creation    It is therefore necessary for the plaintiffs to show affirmatively that these defendants lost the right to hold such offices, as the result of some action taken at that or a subsequent meeting; and we are not informed that any meeting whatever was held after the meeting held in 1885, although the action was not commenced for more than two years thereafter.    At this meeting the defendants received votes representing not only a majority of the capital stock after the increase

to $7,000, but also a majority of the original $3,000. It is apparent, therefore, if the plaintiffs' claim be correct, that the capital stock had never been legally increased above the amount fixed by the original articles of incorporation, the defendants were nevertheless legally re-elected, having received votes representing a majority of such stock; while if $7,000 be taken as the total amount of stock, it is shown that they also received votes representing a majority of said amount.

The only remaining question relates to the plaintiffs' right to have the stock held by the defendants canceled. It appears that the cost of the bridge was estimated at $3,000, and that the capital stock was originally limited to this amount, while it is shown that the actual cost of the bridge was something over $7,000. Consequently it became necessary to provide in some way for this difference, and the stockholders undertook to do it by increasing the capital stock. Nothing is shown to indicate *mala fides* on the part of any one connected with the transaction; on the contrary, it appears that the entire stock was disposed of at par, and the proceeds used to pay the expenses incident to the construction of the bridge, the only irregularity in the entire proceeding consisting in the failure of the parties to have the articles of incorporation amended so as to permit the increased issue of stock. Plaintiffs are asking for the cancellation of all the stock held by the defendants, whether the same be of the original or subsequent issue, to the end that there may be no stock left outstanding except that which is held by the plaintiffs. It is shown, however, that the defendants have at all times held a majority of the original capital stock; and it is admitted that the issue of this stock was kept within the limit fixed in the articles of incorporation; and certainly a subsequent issue, although unauthorized, did not invalidate this stock, and no reason for the cancellation thereof has been shown.

Should it be admitted that the action of the defendants in increasing the capital stock beyond the amount fixed in the articles of incorporation was irregular and illegal, and that in a proper case, with proper parties before the court, the excess of stock might be held for cancellation, such a decree is not sought in this case, and, if entered, would be of no benefit to the plaintiffs, as they are the owners of a large part of this excess, and, before such a decree could be properly entered, plaintiffs would be required to surrender all such stock held by them. If Cushman falsely represented the certificate sold to Byers as covering all the capital stock of the company, this would not change the result, as it does not appear that the defendants were in any way responsible for such false representations; and it does appear that, at the time of the purchase, it was well known that the defendants Rollins, Gaskill and Gooch were then the managers and directors of the company, and had been such managers and directors since its organization, and that Byers purchased well knowing such facts, and the further fact that, under the law, none but stockholders could be directors of a company incorporated under the laws of this state. Byers, with this knowledge, purchased a mere certificate for stock, which was not under the seal of the company and was not signed by its president. Here was sufficient, we think, to have put a prudent man upon inquiry; and reasonable inquiry in this case would undoubtedly have disclosed the true condition of affairs as shown upon the books of the corporation. Byers, not having made such inquiry, must be treated the same as though he purchased with full knowledge of the facts. Wade, Notice, § 11. From whatever aspect the case is viewed, we must hold that the plaintiffs were not entitled to a decree of cancellation.

Finding no error in the proceedings of the trial court, the judgment must be affirmed.

*Affirmed.*