TIMOTHY DILLON, A. LEVENS, W. T. DILLON and the TELE-
GRAPH COMPAY, Appellants, v. PATRICK J. LEE, JAMES
M. BOOTHBY, THE DUBUQUE SPECIALTY MACHINE
WORKS, and WILLIAM S. BRADLEY and GEORGE A.
STAPLES, Administrator of the Estate of George M.
Staples, Deceased.

**Unlawful Profits by Officers:** NECESSITY FOR DEMANDING SUIT: *Corporations.* In a suit by members of a corporation to recover profits unlawfully made from the corporation by its treasurer, the fact that the defendants were among those in control of the corporation when such profit was made does not relieve plaintiffs from the necessity of showing that they demanded that the corporation bring the suit, and that it had refused.

DISSOLUTION OF CORPORATION. where a corporation was in existence at the time the action arose, the fact that it was dissolved at the time the suit was brought did not relieve plaintiffs from showing demand and refusal of the corporation to bring the suit.

**Assignment:** CONSIDERATION: *Corporate stock.* Where the holders of corporate stock contended that an assignment thereof was made with the understanding that new certificates should be issued therefore, and the assignment was made in consideration of a dividend to which they were entitled, irrespective of the assignment, they were not required to tender a return of the dividend received in order to have the assignment set aside.

**Plea and Proof:** ACTION FOR PROFITS MADE BY OFFICERS: *Corporations.* Where stockholders failed to prove their allegation that they had demanded that the corporation institute suit for profits wrongfully made by its treasurer, which was denied, they were not entitled to recover in a suit for such profits brought in their own names.

**Pleading:** DENIAL: *Abatement.* Though, in general, a plea denying that stockholders had demanded that the corporation should bring suit against its treasurer on a demand due the corporation should be raised by plea in abatement, yet, where plaintiffs alleged they made the demand, which defendants denied, the issue was properly raised.

*Appeal from Dubuque District Court.*—HON. J. L. HUSTED,
Judge.

SATURDAY, DECEMBER 16, 1899.

SUIT to set aside certain transfers of stock in a corporation known as the Dubuque Specialty Machine Works, and to recover of defendant Lee, for the benefit of the stockholders in said corporation, the sum of two thousand dollars, alleged to have been wrongfully appropriated by him while acting as treasurer of the corporation. There was a trial to the court, resulting in a decree dismissing the plaintiffs' petition, and they appeal.—*Modified.*

*William Graham* and *Alphons Matthews* for appellants.

*Longueville, McCarthy & Kenline, Henderson, Hurd, Lenehan & Kiesel,* and *T. J. Paisley* for appellees.

DEEMER, J.—The Dubuque Specialty Machine Works was organized as a corporation in the year 1891, with a capital stock of two hundred thousand dollars, represented by two thousand shares, of the nominal value of one hundred dollars each. One A. Ferris Smith was the promoter and organizer of the corporation, and after its organization he sold it a certain patent in consideration of certain shares of stock, and a contract which provided, among other things, that he should receive from the corporation the sum of fourteen thousand dollars from the first net earnings of the company. Plaintiff Dillon held one hundred and ninety-nine and two-thirds shares, Levens one hundred and thirty shares, the Telegraph Company two hundred shares, and the firm of Levens & Dillon three hundred and fifty shares. E. W. Albee and L. M. Rafoth, who were at one time parties to the suit, owned in the aggregate seventy-four shares of stock in the corporation. Defendants Lee, Bothby, and G. M. Staples also owned stock. Lee was also a director and treasurer of the corporation, and a part of the time acted as secretary. In the summer of 1895 the corporation sold its plant and machinery for one hundred thousand dollars in

cash, which amount was paid to Lee, as treasurer; and, there-after a dividend of forty-five dollars per share was declared, and paid to the stockholders. As some of these stockholders were in arrears on assessments, these arrears were deducted from the dividends awarded them, so that the total amount paid out of the sale price of the plant was eight-one thousand one hundred and eighty-eight dollars and thirty-three cents, to which should be added something like five thousand five hundred dollars paid out for other matters; leaving a balance in the hands of the treasurer, on September 2, 1895, of thirteen thousand three hundred and seventy-nine dollars and seventy-six cents. In January of the year 1892, Smith assigned one-half of the fourteen thousand dollar obligation issued to him by the company to D. M. Hillis, of Chicago, and on the same day notified the corporation of the assignment. This assignment was made as collateral security to a debt Smith was then owing Hillis. In September of the same year, Smith assigned the other half of the contract to defendant Lee, "for his own use," and in this assignment stated that the previous assignment was made to Hillis as trustee, and agreed to have the assignment made to him corrected so as to show that fact. The evidence shows that the assignment to Lee was for the benefit of both Dillon and Lee, as Dillon had advanced one-half of the amount paid by Lee for the assignment. Dillon transferred his interest to some of the other stockholders, and thereafter Staples, the Telegraph Company, Bothby, Dillon, Levens & Dillon, Levens, and defendant Lee transferred a one-half interest in the Smith contract to the corporation. On September 2, 1895, Lee went to Chicago, where Hillis lived and there, for the consideration of five thousand dollars, procured an assignment of his one-half of the Smith contract to be made to him (Lee). He paid the consideration by his personal check on the Citizens' State Bank of Dubuque, of which Lee was president, and claims that on his arrival home from Chicago he borrowed

the sum of $5,000 with which to meet the check, which was presented and paid on the 4th day of September. On that day Lee, as treasurer of the Dubuque Specialty Machine Works, had in his possession nearly fourteen thousand dollars in cash, and he thereupon charged the corporation with the sum of seven thousand dollars, placed that sum to his credit on the stock books of the bank and charged himself with the five thousand dollars he claims to have borrowed of the bank. The plaintiffs claim that the corporation furnished the money that paid this claim, and that Lee defrauded them out of two thousand dollars in his manipulation thereof. They also claim that Lee was an officer and agent of the corporation, and as such could not buy up claims against it, and make a profit thereon. Lee insists that he acquired the original assignment of a one-half interest in the Smith contract to secure protection for advances he had made to Smith, and that he was obliged to pay the amount of Hillis' claim against Smith in order to save his security, and that he advanced, in all, the sum of seven thousand three hundred dollars for the assignment of Hillis' one-half interest. This is one of the issues in the case, which will hereafter receive attention. Early in the year 1896, the plaintiffs indorsed and transferred their stock in the corporation to Smith, and he in turn transferred the same to Lee, who caused new certificates to be issued, as follows: Certificates for three hundred and ninety-seven shares to the Staples estate, for two hundred and twenty-five shares to defendant Bothby, and two hundred and eighty-two and two-third shares to himself. Plaintiffs admit having received 50 cents a share on their certificates, but say that this was paid as a dividend, and not by way of purchase, and that they indorsed and delivered their shares to Smith on the strength of representations made by them to Smith and others that the stock was to be gathered up for the purpose of dissolving the corporation; that it was to be turned over to one Bradley, as trustee, to be held until all unfinished matters were

disposed of; that they had no thought of selling their shares of stock; and that defendants acquired title thereto through fraud and misrepresentations. These claims are denied by the defendants. Lee claims that he purchased the stock from Smith at one dollar per share, for himself and his co-defendants, without knowledge of any fraud on the part of Smith, and that plaintiffs are not entitled to rescind the sale. All parties agree that at the time of the transfer of the stock there were some unsettled accounts due the corporation, and some claims against it for adjustment.

The suit, as we have seen, is to set aside these transfers of stock, and to recover the two thousand dollars profit which it is claimed Lee made in procuring the assignment of the Hillis interest in the Smith contract. In order to have any standing in court, plaintiffs must show that they are entitled to the stock which they indorsed and transferred to Smith. Without this stock, they have no claim to any part of the alleged two thousand dollars profit. As their right to set aside these transfers lies at the threshold of the case, we will determine that, before looking to the other issues. On the one hand, it is contended that Smith was agent for defendants in procuring this stock from plaintiffs, and that they are bound by whatever Smith did or said, while, on the other, it is insisted that defendants purchased their stock of Smith, and are not bound by any representations or statements made by him. Defendants also argue that, as plaintiffs received a consideration for their transfer they are not entitled to rescind without returning, or offering to return, the consideration paid.

The first point raises a question of fact, and the second one of law. We are constrained to hold that Smith was the agent of defendants in procuring the stock from the plaintiffs, and was to receive as compensation for his services the sum of fifty cents per share. We are also of opinion that he made the representations to plain-

tiffs substantially as claimed, and that they did not intend to, and did not in fact, sell their stock; that they delivered it to Smith, and accepted the fifty cents per share paid them thereon, with the understanding that the payment was a dividend, and that the shares should be delivered to Bradley, as trustee, in order that the corporation might be dissolved and the corporate affairs closed up. This being true, there was a mistake taken advantage of by defendants or their agents, or such a fraud perpetrated upon them as that equity will set aside the alleged transfers, and decree them to be the owners of the stock, unless it be for the fact that they have not tendered back or offered to return the amount received by them when they parted with their shares. If plaintiffs were seeking to rescind a contract which they had been induced to enter into through fraud, there would be much force in defendants' contention. That is not their exact position, however. True, they assigned their stock, but they claim it was done in order that a trustee might take title thereto, to the end that the corporation might be dissolved. Defendants do not claim that they made a purchase from them. They claim to have purchased through Smith. It is a case of no contract, or of a contract under which they were entitled to dividends in virtue of their ownership of the stock. The evidence shows, without conflict, that, as shareholders, they would have been entitled to the amount received by them as dividends; hence they are entitled to retain the sum paid, even if there has been a sale obtained through fraud. As sustaining our conclusions, see *Hendrickson v. Hendrickson,* 51 Iowa, 68; *O'Brien v. Railway Co.* 89 Iowa, 644; *Howard v. McMillen,* 101 Iowa, 453. There was no necessity, then, for an offer to return the amount paid. Defendants' claim that they purchased the stock from Smith without knowledge of his fraud is not sustained by the evidence. There should have been a decree directing the return of the stock to the plaintiff, or a reissuance thereof,

if the same has been cancelled, and a return by defendants of a like number of shares issued by the corporation to them under date of May 6, 1896, for cancellation.

The other issue relates to the alleged profits made by Lee in the purchase of the Hillis interest in the Smith contract. These profits, if any there were, belonged to the corporation, and not to the individual stockholders. A fraud or an *ultra vires* or negligent act on the part of the directors or officers of a corporation is an injury done to the corporation itself, and it is the duty of the corporation to institute action to remedy the injury. Before a stockholder may bring such suit, he must make a formal request of the corporate officers that suit be instituted, and upon its neglect or refusal an action will lie on behalf of one or more of the stockholders. As stated by Cook, Stock & Stockholders (2d ed.) section 740: "It is well settled, however, that he must allege in his bill in equity that such a request has been made, and has not been complied with." True, there are occasions when no such demand or request is necessary, but it seems to be held that in such cases the facts which excuse such demand must be stated. Cook, Stocks & Stockholders, section 741, note 1. In recognition of this rule, plaintiffs alleged in their petition that they had requested the board of directors of the corporation to bring suit against Lee for the recovery of the money appropriated by him, and that the board neglected and refused to do so. This allegation was squarely denied by the defendants, and was thus put in issue. Plaintiffs offered no evidence in support of their allegations, and for this reason, if for no other, they must fail.

It is said, however, that the issue should have been tendered by plea in abatement. If that be the general rule, plaintiffs have made this case an exception by alleging demand and refusal, which defendants denied. Surely, defendants were not, under such a state of the record, required to plead the matter in abatement.

Further, it is argued that as defendants were guilty parties, and were in control of the corporation, no demand was necessary. But one of the defendants was guilty of profiting from the alleged wrong in the purchase of the Hillis assignment. The others were presumably adversely interested. At any rate, Lee, the only party in the wrong in this transaction, was but one of the directors, and he did not have control of the corporation.

It is also said that the corporation was no longer a going concern, and hence no demand was necessary. The record does not sustain the claim. But, if it did, it would be no defense; for the damage, if any, was to the corporation, and until finally dissolved it had the right to bring suit to enforce its claims. *Railroad Co. v. Horton*, 38 Iowa, 38; *Muscatine Turn Verein v. Funck*, 18 Iowa, 469. Moreover, there is no showing that defendants constituted a majority of the board of directors, and no excuse is either pleaded or proved for not making the demand. Under this state of the record, plaintiffs are not entitled to recover the alleged profits made by Lee in the purchase of the Hillis-Smith claim, even if the record established the claims made by them. The decree will be modified as hereinbefore indicated, and as so modified it will stand affirmed. The parties plaintiff and defendant will each pay one-half the costs.——MODIFIED and AFFIRMED.

GRANGER, J., not sitting.