# CHARLESTON

DEVENY *v.* HART COAL COMPANY, *et al.*

Submitted September 7, 1907.    Decided February 25, 1908.

1. EQUITY—*Jurisdiction—Fraud.*
   Equity always has jurisdiction when fraud is well charged against the defendant. (p. 657.)

2. CORPORATIONS—*Suits by Stockholders—When Maintainable.*
   Syllabus, point 1, *Rathbone* v. *Gas Co.*, 31 W. Va. 798, approved and applied. (p. 658.)

Appeal from Circuit Court, Marion County.

Action by Thomas A. Deveny and others against the Hart Coal Company and others. Decree for plaintiffs, and defendants James F. Cook and others appeal.

*Reversed. Remanded.*

W. S. HAYMOND, HARRY SHAW, U. N. ARNETT, JR., and H. M. RUSSELL, for appellants.

W. S. MEREDITH, C. POWELL, G. M. ALEXANDER, and EDWARD A. BRANNON, for appellees Hart Coal Co., Deveny and others. MALCOLM JACKSON, for appellees Brooks' administrators.

MCWHORTER, JUDGE:

At the June Rules, 1903, of the circuit court of Marion county Thomas A. Deveny, John McCool, John W. Irvin, John R. Bennett, John J. McCool, Robert Talbot, S, C.

Brown, John F. Somerville, A. T. B. Somerville, Robert L. Somerville and David Victor filed their bill of complaint against the Hart Coal Company, a corporation, James F. Cook, John P. Hart, Joseph Hart, Peter Hart, George X. Hart, E. P. Wise, James L. Erwin, James L. Getting, Margaret Carney, A. A. Carney, Rush Miller, H. F. Neff, Glenn F. Barnes, W. E. Echols, Isham Keith, H. S. Falconer, J. P. Alkire, James Peacock, Frank Schneider, Ella Horan, B. C. Fitzhugh, John Jenkins, H. C. Brooks, Frances J. Brooks, and Herbert C. Brooks, administratrix and administrator of William B. Brooks, deceased, alleging that the said Hart Coal Company was organized for the purpose of mining, shipping and selling coal and purchasing coal lands and other real estate, operating the same and for other purposes; that the plaintiffs and the defendants, other than the defendant Hart Coal Company, were all stockholders of said corporation, setting out the number of shares owned by each of the said stockholders, said shares being of the par value of $100, and that the authorized capital stock of said corporation was $250,000 or 2,500 shares, the number of shares held by the said stockholders when the bill was filed being 1834 shares of the capital stock, of which the defendant James F. Cook owned 381 shares and John P. Hart 338 shares; that the certificate of incorporation was issued on the 13th day of March, 1902; that the stocholders waived notice of first meeting and on the 18th day of March, 1902, they held a meeting organizing a corporation, adopting by-laws, and electing seven directors, namely, William B. Brooks, James F. Cook, S. C. Brown, John P. Hart, Isham Keith, W. E. Echols and H. S. Falconer; that at said stockholders meeting the stock then subscribed was 410 shares and had been paid for in full; $41,000 had been paid in according to the minutes of said meeting and was then held in part by the following stockholders: William B. Brooks, 125 shares; James F. Cook, 100 shares; S. C. Brown, 50 shares; John P. Hart, 75 shares; H. S. Falconer, 15 shares; Isham Keith, 15 shares; J. P. Alkire, 15 shares. That at a meeting of the said stockholders held on the 21st of March, 1902, they directed that 90 additional shares be sold at not less than par which were afterwards sold, 30 shares to Thomas A. Deveny, 50 shares to John McCool and 10 shares to ———, which increased the capital stock to $50,000; that

the stockholders, on the 13th of May, 1902, passed a resolution to increase the capital stock to 2,500 shares which was certified to the Secretary of State and the increase authorized; that about the time of said authorization of said increase said William B .Brooks, then a director and president of the said corporation. James E. Cook, then a director and manager thereof, and John P. Hart, then a director and secretary and treasurer of the corporation sold 1334 additional shares of said stock at par and collected the full amount thereof, to-wit, $133,500; that on and before the 13th day of May, 1902, the paid up stock of the corporation was $183,400 all owned as thereinbefore set forth. That the said first meeting held on the 18th of March, 1902, James F. Cook stated to the meeting that he had negotiated for and purchased for said company a coal field plant situated at Wee Gee, Belmont county, Ohio, that he had agreed to pay and had paid to one D. W. Cooper, therefor the sum of $40,000 and also reported that he had paid the said $40,000 out of money turned over to him for stock taken in the said corporation and that he had caused a deed for said property to be executed to and in the name of the said company by the said Cooper; that said stockholders meeting accepted and ratified said purchase and directed the same to be reported to the board of directors of the company, said directors to take such action as might be necessary to ratify and approve the purchase; when a meeting of the board of directors on the same day ratified and approved the said purchase and ordered the deed for said property recorded, a copy of which deed was filed as an exhibit with the bill. The bill further alleged that the said Cook, Brooks and Hart, proceeding to act for and on behalf of said corporation, purchased the said property from the said Cooper and paid him therefor the sum of $25,000; that the said Cook, Brooks and Hart conspired and confederated together to cheat and defraud said corporation and in pursuance of such conspiracy caused the said Cooper, who only received $25,000 for the property, to have it falsely written and inserted in the deed that the same was in consideration of $40,000 and caused said Cooper to falsely and fraudulently, for the benefit of said Cook, Brooks and Hart, acknowledge the receipt of said $40,000 in the deed. That said Cook, Brooks and Hart, acting as officers and

trustees of the said corporation, fraudulently received $40,-000 of the money of the corporation falsely representing and pretending that it was for the purchase of the said coal property and paid Cooper the $25,000 of the $40,000 and appropriated to their own use the $15,000.

That on the 14th day of May, 1902, the said Cook, Brooks and Hart, again acting as the directors and officers and as such trustees of said corporation and the other stockholders thereof, purchased from Owen Meehan a property known as the Franklin Coal Mines and its equipments for the price of $100,000; that said purchase was made by said Cook, Brooks and Hart through one James F. Anderson, who was then an attorney and agent for the said Owen Meehan; that Cook, Brooks and Hart conspired and confederated together to cheat and defraud the corporation and the other stockholders and in pursuance of said conspiracy caused and procured said Meehan to convey said property to his said attorney, Anderson, for the consideration of $100,000, paid and satisfied as thereinafter set forth, and caused and procured said Anderson immediately and as one act to convey said property to the said Hart Coal Company—a copy of said deeds from Meehan to Anderson and from Anderson to the company were filed as exhibits with the bill. That said Cook, Brooks and Hart paid to Meehan for said property, with the money of said corporation, the sum of $55,000 cash and caused said Anderson (with the promise to said Anderson and Meehan that said corporation would assume the payment thereof) to execute to said Meehan two notes calling for $22,500 each due in six and twelve months respectively from the 15th day of May, 1902; and further caused said Anderson to secure the payment of said notes by executing a mortgage on said property on the day the deeds were executed as a part of the same act and transaction. That said Cook, Brooks and Hart, in pursuance of said conspiracy to cheat and defraud the corporation and the stockholders, caused and procured Anderson to execute said deed to said corporation and to have it recited and written in said deed falsely and fraudulently that said "corporation" (meaning the deed, I presume) was made "for the consideration of one hundred and forty thousand dollars ($140,000.00,) received to our full satisfaction of the Hart Coal Company;" and on behalf of said corporation

did assume or caused said corporation to assume the payment of said two notes. That no money whatever was paid to said Anderson for the conveyance of said property to said corporation; that the only money or thing of value the said Cook, Brooks and Hart paid or caused to be paid and passed for the said corporation for said property was $55,000 of the money of said corporation to said Meehan and the assumption of the payment of the two notes, said money and notes aggregating $100,000, the whole consideration paid for said property. That said Cook, Brooks and Hart falsely and fraudulently represented unto the other stockholders and agents of said corporation that they paid $95,000 cash and assumed the payment on behalf of said corporation of said two notes and in payment of said $95,000 used the money and funds of said corporation; that said Cook, Brooks and Hart, acting as the directors, officers and agents of said corporation and as such directors, officers and agents the trustees for said corporation and the other stockholders, fraudulently took and received $95,000 of the money belonging to the corporation falsely and fraudulently representing that it was for the payment of the cash installment of the purchase price of said property, and of said $95,000 paid but $55,000 and fraudulently, and in pursuance of said conspiracy, appropriated and converted to their own use $40,000 belonging to the said corporation in addition to the said $15,000. That Cook, Brooks and Hart never accounted to nor satisfied said corporation for the said two sums of money, $15,000 and $40,000, and the same and the whole thereof was justly due to said Hart Coal Company from defendants Cook and Hart jointly and severally and that as Brooks had departed this life his estate was liable in the hands of his personal representatives who were parties to the suit. That said corporation and all its business was under the control of said Cook, Brooks and Hart until the death of Brooks, which took place on the 2nd day of July, 1902, and after his death the corporation and all its business was under the control of Cook and Hart until the 4th day of October, 1902; that on said last named date the plaintiffs and other stockholders desiring to have the affairs of the corporation investigated and to compel said Cook and Hart to account for the property and money of the same and especially for the said sum of $15,000 and the sum of

$40,000 held a meeting of the stockdolders and at said meeting said Cook and Hart and the other directors were removed and there was elected as directors T. A. Deveny, R. L. Somerville, Rush Miller, F. H. Neff, H. C. Brooks, John McCool and Isham Keith; that shortly afterwards, to-wit, on December 13, 1902, through the influence and procurement of said Cook and Hart a pretended meeting of the stockholders was held and on motion of Cook seconded by Hart an amendment to the by-laws of the corporation was made reducing the number of the members of the board of directors from seven to five, all the members of said board elected as aforesaid on October 4, 1902, (except Isham Keith who had resigned) were removed and there were elected or pretended to be elected as directors the said Cook, Hart, J. L. Getting, John McCool and J. L. Irvin; that said pretended meeting of stockholders was unlawful, was held without proper notice, and that a majority of the stockholders of said corporation was not represented; that said meeting was held through the influence and procurement of said Cook and Hart so that they would be able, by reducing the number of directors from seven to five and procuring their own election as members thereof, to control said corporation and hinder, if not prevent, a suit being brought for the purpose of compelling them to account to said corporation for said sum of money; and, in furtherance of the design of the said Cook and Hart to control said corporation and hinder and prevent the institution of any such suit, at the first meeting of this new board of directors, held on the 13th of December, 1902, Hart and Cook caused themselves to be elected respectively president and general manager of the said corporation and still held said offices. That said corporation was at the time of the institution of this suit and still was under the control of said defendants Cook and Hart, "and plaintiffs aver that said Cook and Hart will not institute a suit by the directors of said corporation, in the name of the corporation, and will not permit such suit to be brought to protect the interests of said corporation in the premises and compel said Cook and Hart, or Cook, Hart and the personal representatives of said William B. Brooks, deceased, to account for said sums of money to said corporation." That plaintiffs were advised and believed that they were entitled as stockholders to maintain this

bill in equity to protect the interests of said corporation and the interests of all the stockholders thereof in the premises that justice might be done. The bill further alleges that the said Cook, Brooks and Hart, from the incorporation of said company till the death of said Brooks, collected, handled and used (so far as it was used) all the money of said corporation and that since the death of Brooks said Cook and Hart had collected and handled all the money thereof; that during the time of the existence of said corporation it had mined and sold large quantities of coal and realized large sums of money therefor; that said Cook, Brooks and Hart jointly received all of said money for coal as well as all of said paid up stock; that the books of the company and the minutes of the meetings of the board of directors and of the stockholders had been very imperfectly and inaccurately kept so that plaintiffs did not know and could not, or had not been able to ascertain the financial condition of the corporation, and filed with their bill a copy of the minutes of all the meetings of the stockholders and all the meetings of the directors of said corporation from its organization to the time of the bringing of this suit from an inspection of which it would clearly appear that said minutes had been imperfectly and inaccurately kept. That Frances J. Brooks and Herbert C. Brooks had been duly appointed and qualified administratrix and administrator of the estate of said William B. Brooks, deceased, and had sufficient estate as such administrators to satisfy any demand that might be made on said estate by reason of the matters contained in the bill. That William B. Brooks died seized and possessed of 287 shares of the capital stock of said corporation all of which, as plaintiffs were informed, had been assigned by personal representatives to some of the defendants in this cause. And prayed that the defendants Cook and Hart be required to answer positively and fully and in detail the allegations of the bill and in their answer to make full and complete settlement of the financial affairs of the said corporation, showing in detail all money collected by them, or either of them, from any source and from all sources, or which belonged to said corporation and showing in detail all payments and expenditures with or out of said money, and that they be required to make a complete exposition of all the business and affairs of said corporation and that they be

required to pay over to the said corporation, or to such person or persons as the court might designate to receive the same, said sums of $15,000 and $40,000 which they, together with Brooks, unlawfully and fraudulently appropriated and converted to their own use as set forth; that if necessary a special receiver be appointed to take charge of the money and funds of said corporation, &c.; that the administrators of Brooks be required to state in their answer what property and estate came to their hands as such personal representatives, what they have done with the shares of stock of said corporation of which said W. B. Brooks died seized and possessed; and that said personal representatives be decreed to be liable as such, so far as they have estate of this decedent in their hands, for said sums of $15,000 and $40,000, &c.

A demurrer was entered to said bill, and on the 1st day of August, 1903, the demurrer was overruled and leave given defendants to file their answers in the clerk's office within sixty days, and leave to plaintiffs to reply thereto within ten days after the same were filed. On the 10th day of December, 1903, the joint and several answer of Herbert C. Brooks and Frances J. Brooks, administrators of the personal estate of W. B. Brooks, deceased, and the answers of defendants James F. Cook and John P. Hart were filed and general replications made thereto. Depositions were taken and filed and the cause finally heard on June 27, 1905, when the court decreed in favor of the Hart Coal Company against defendants Hart and Cook for the $40,000 and interest aggregating $47,480 to be refunded to said company, from which decree the defendants James F. Cook and John P. Hart appealed and say the court erred in overruling their demurrer to the bill and also in decreeing against them the said sum of $47,480, interest and costs.

The first assignment is in overruling the demurrer to the bill. Appellants insist that the bill is not sufficient in its allegations to authorize a stockholder or stockholders to bring suit to recover in favor of the corporation. First that their proper action was at law, that an action of *assumpsit* would give ample relief and therefore equity has not jurisdiction. Equity always has jurisdiction when fraud is well charged. In *Maurice* v. *Devol*, 23 W. Va. 247, it is held: "Equity always has jurisdiction of causes involving the fraud of one

42

party against the other, unless the party who seeks relief was himself guilty of fraud in the transaction."

The bill no where alleges that a demand or request was made on the part of the plaintiffs or any of them upon the directors to bring suit in the name of the corporation. In *Rathbone* v. *Gas Co.*, 31 W. Va. 798, (Syl. pt. 1), it is held: "In order to entitle a stockholder to institute and maintain a suit in equity to redress a corporate injury committed *infra vires* against a solvent corporation in the full exercise of its franchises and carrying on its corporate business, it must appear not only that the directors are either disabled by their misconduct to sue, or that they have wrongfully refused to do so upon a proper demand; but where the matter will admit of the necessary delay, and it is practicable to call upon the stockholders to act, this must also be done. Until it is shown, that every reasonable effort to obtain redress through the regularly constituted agents and controlling power of the corporation has proved unavailing, a stockholder cannot sue in his own name alone nor on behalf of himself and other stockholders."

In case at bar while it is alleged that the corporation was under the control of the defendants Cook, Hart and Brooks during the lifetime of Brooks, and of Cook and Hart after the death of Brooks, it is not made to appear that a majority of the directors were wrongdoers, or that if a demand had been made, it would not have been granted. Pomeroy in his Equity Jurisprudence, 3 vol. section 1095, says that a stockholder may sue whenever the corporation, either actually or virtually, refuses to permit a proceeding by itself; and says: "These are two distinct conditions of fact; and the circumstances must determine whether any particular case belongs to one or the other of the two conditions. In general, a case should come within the first condition; and it should appear that the board of directors or other managing body has actually refused to bring or permit an action in its own name. To this end the plaintiff should allege an application to the directors or managing body, a reasonable notice, request, or demand, that they would institute proceedings on the part of the corporation against the wrongdoers, and their refusal to do so after such reasonable request or demand. These allegations are material and issuable; if controverted by the

defendant, they must be proved. * * * * This conditition of fact, however, is not indispensible; * * * * If the facts as alleged show that the defendants charged with the wrong-doing, or some of them, constitute a majority of the directors or managing body at the time of commencing the suit, or that the directors or a majority thereof are still under the control of the wrong-doing defendants, so that a refusal of the managing body, if requested to bring a suit in the name of the corporation, may be inferred with reasonable certainty, then an action by a stockholder may be maintained without alleging or proving any notice, request, demand, or express refusal."

In the case of *Rathbone* v. *Gas Co.*, cited, in the opinion of the Court at page 806 it is said: "In order to entitle a shareholder to sue he must show, either, that the managing agents are themselves the authors of the wrong, or, that their refusal to bring suit in the name of the corporation is an act of bad faith, or an abuse of the discretionery power vested in them. Even this rule is subject to this qualification: The directors and agents of the corporation are inferior to and under the control of a majority of the shareholders. Consequently, when the directors refuse to discharge their duty, they may be removed or controlled by a majority of the shareholders. Thus, in order to confer upon a shareholder the right to sue, in a case in which the primary right is in the corporation, he must not only show, that the directors are in default or wrongfully refuse to sue, but he must show, that a majority of the stockholders have been appealed to, and, that they are also guilty of misconduct, or willfully and wrongfully refuse to act in the matter. 1 Mor. Priv. Corp. sections 242-246; *Foss* v. *Harbottle*, 2 Hare 493; *Hodges* v. *Screw Co.*, 53 Amer. Dec. 624, note 637; Cook Stocks, sections 677, 678. In *Stevens* v. *Davison*, 18 Grat. 819, the act complained of was done *ultra vires*, and had been repudiated by the stockholders in regular meeting, and the question of the right to institute that suit was not raised or considered by the court."

In plaintiffs allegation concerning the alleged illegal meeting of the stockholders held December 13, 1902, when it appears that a majority of the stock was represented, 1052 shares, it is not alleged that the greater part of the stock

represented at that meeting was held by the wrong-doing directors, nor that a majority of the five directors there elected were opposed to the corporation instituting the suit.

The allegation that the "corporation was at the time of the institution of this suit and still is under the control of said defendants James F. Cook and John P. Hart, and plaintiffs aver that said Cook and Hart will not institute a suit by the directors of said corporation in the name of the corporation and will not permit such suit to be brought," is too general and does not specify in what manner or how two directors are enabled to control a body of five. The demurrer should have been sustained. We therefore reverse the decree, sustain the demurrer to the bill and remand the cause to the circuit court of Marion county with leave to plaintiffs to amend their bill, if they shall be so advised, and for further proceedings there to be had therein according to the rules governing courts of equity.

*Reversed.   Remanded.*