[No. 6497.]

## HOLMES EXECUTOR, v. JEWETT.

1. APPEALS—*Finding below, the evidence consisting solely in depositions.* Where the evidence is entirely in depositions, and presents no conflict, the court of review weighs the testimony without regard to the finding below.

2. —— *Judgment.* It appearing that the action was one which, under the circumstances shown in the record, the plaintiff was not entitled to prosecute, a decree in his favor was reversed, and the cause remanded with directions to dismiss.

3. CORPORATIONS—*Stockholder's Suit.* Ordinarily a stockholder may not maintain an action to vacate a conveyance of the corporate property, wrongfully executed by the officers. Where such a suit is permitted the stockholder acts for the corporation and whatever relief is obtained is granted to the corporation.

The stockholder must show that the directors have refused to bring the action, and that he has done all in his power to obtain relief through corporate action. An action instituted by a stockolder without any request to the directors cannot be maintained.

4. —— *Diligence Required—Laches.* It is a strict rule, especially as to property of fluctuating value, like mining claims, that a stockholder proposing to assail a conveyance of the property of the corporation must act promptly. A delay of nearly four years, with a knowledge of all the circumstances, and without any excuse, was held fatal to the stockholder's action.

5. ——*Ratification—Acquiescence.* The property of a mining corporation had been irregularly conveyed to its president; but the transaction was made in good faith, without concealment, or wrongful intent. All shareholders were immediately advised of the conveyance, and exhorted to join on equal terms in the re-habilitation of the property. A stockholder with full knowledge of all the circumstances forbore action for nearly four years, proposing meantime on more than one occasion to unite with the president in the development of the property for their joint account. *Held* that he had thus acquiesced in the conveyance, and was not entitled to maintain an action to assail it.

6. FOREIGN CORPORATION—*Expiration of Charter.* A corporation organized under the laws of another state has no existence in Colorado, without a renewal of its charter, after the lapse of twenty years from its incorporation. Gabbert J.

7. ——*Judicial Interference with Internal Management.* It is settled that a court will not, at the suit of a minority stockholder, determine the rights of a foreign corporation which depend on the internal management of its affairs. The exceptions to the rule considered, and the action being brought to set aside a conveyance of corporate property situate in Colorado, executed by the proper officers, pursuant to a vote of the directors was held to be within the rule and not within any exception to it.

*Appeal from Park District Court.*—Hon. M. S. BAILEY, Judge.

Mr. CHARLES A. WILKIN and Mr. R. D. THOMPSON, for appellant.

Mr. HENRY C. HALL and Mr. FLOYD W. BASSETT, for appellees.

Mr. JUSTICE GARRIGUES delivered the opinion of the court.

1. The Rome Mining Company with 500,000 shares of capital stock, was incorporated October 8, 1881, in the state of New York for a period of 50 years. October 29, 1881, more than twenty years prior to the bringing of this action, it filed with the secretary of state of Colorado, its articles of incorporation, which have never been renewed. It appears its object was mining in Park county, Colorado, with New York City, and Fairplay, Colorado, the principal places for carrying on its business. The company shortly after its organization acquired four mining locations in Park county upon which it soon exhausted its resources without developing any values. Its mining operations failed, its claims were sold for taxes and a treasurer's deed therefor executed May 4, 1898, to Morris Gummere. It possessed no other property and had ceased to hold stockholders' meetings. In April, 1898, George R. Blanchard, who had been a trustee and president of the company since its organization, called a stockholders' meeting to be held at the home office in New York. Pursuant to this call, a stockholders' meeting was held on the 10th and 11th of May. The action taken at this meeting by the stockholders, and the subsequent action of the trustees on the 16th, based thereon, gives rise to this litigation.

Plaintiff's father, Hugh Jewett, died March 6, 1898, owning 53,320 shares of the stock of the company, and

the right of Kennon Jewett to bring this suit in Colorado on behalf of the corporation, is based upon the location of the property in this state, and his ownership of this stock, acquired through his father's will, and transferred to him by the executors December 16, 1898.

There were represented at the May stockholders' meeting including the Jewett stock, 262,470 shares, and excluding it, 209,150 shares. Julian W. Robbins, who had married plaintiff's sister, attended this meeting as executor of the Jewett estate for the purpose of representing the Jewett stock. He knew the object of the meeting, and heard the resolution offered to convey the mining claims to Blanchard. He made no objection, but declined to vote the stock, and had the notation of its presence at the meeting, which the secretary made, withdrawn. This course was taken under the advice of the attorney for the Jewett estate. The 209,150 shares remaining after the withdrawal of the Jewett stock were unanimously voted in favor of transferring the property to Blanchard, and the trustees were instructed to deed the claims to him in exchange for a certain contract, which he gave the company. Blanchard was promoting the idea of developing the property through a leasing company which, if it found merchantable ore, would pay a royalty to the Blanchard association, of which ten per cent was to be given to the Rome Mining Company. In accordance with the stockholders' instructions at this meeting, and to carry out their agreement with Blanchard, four of the trustees met in board meeting May 16, 1898, and directed the treasurer to make and deliver the deed to Blanchard, which was done. It was an open transaction made honestly and in good faith, without the slightest taint of actual fraud, and with no concealment, deception, secrecy, or moral turpitude of any kind whatever. The day Blanchard received the deed, he sent a circular letter to every stockholder, ex-

plaining the transaction fully, the plan then in contemplation, and urging them all to join him upon an equal footing in the attempt to further develop the property. This was also further urged by private correspondence, and personal conferences. On February 24, 1899, he purchased the tax title from Gummere for $200.00. From the time Blanchard received the deed from the company, May 17, 1898, up to his death, October 8, 1900, he had expended on the property in cash, $954.17. This suit was brought in Park county, Colorado, against Julia A. Blanchard, his widow, as sole devisee and legatee of George R. Blanchard, Alfred H. Brown, as secretary of the company, and the mining company, all residing and domiciled at New York City. No reason is offered for bringing the case in this state except that the property is located here. Delia A. Blanchard died May 3, 1903, while the suit was pending, and George Holmes, her sole executor, was substituted as defendant. Kennon Jewett, whose domicile was 35 Warren street, New York, but who was then residing temporarily in Colorado Springs, brought this action almost four years after the company's deed to Blanchard. The complaint charges the deed was without consideration; that less than a quorum was present at the stockholders' meeting which elected the trustees and directed them to execute the deed; that the board of seven trustees was not legally elected; that there were only four present at the meeting, including Blanchard, who voted without any right to do so, on the proposition, and without him there was less than a quorum of the directors. It prays that Delia A. Blanchard be compelled to reconvey the property to the Rome Mining Company on payment to her of the amount expended thereon by them since the acquisition of the title by her husband. There is not a word in either the complaint or decree about removing a specific cloud, or any cloud from the title.

The court found that the Rome Mining Company owned, and was entitled to the possession of the property; that its deed to Blanchard was without authority or consideration, and a fraud on the rights of the stockholders; and that whatever title Blanchard acquired by the deed from Gummere, the owner of the tax title, was held in trust for the company. It set aside the tax deed to Gummere, and ordered that on or before November, 1907, Holmes, as executor, deed the property to the company, and in default thereof, that the record of a duly certified copy of the decree in the office of the clerk and recorder should vest title in the company.

There is no conflict in the proof. All the material facts are contained in the pleadings and the deposition of Brown, the secretary, taken in New York by the plaintiff, under the statute as upon cross examination, and this court may therefore review and weigh the evidence unhampered by any finding of the trial court. An appeal was taken by George Holmes.

2. This is a stockholder's suit to compel a return to the corporation of the property deeded Blanchard. Ordinarily a stockholder cannot maintain such an action. As a rule suits to enforce rights belonging to the corporation must be brought in its name and upon the action of the board of directors, and where a stockholder is permitted to bring such a suit, he acts for the corporation on the equitable ground that the officers who should have brought it in the name of the corporation refuse to act or are violating some trust reposed in them by the stockholders. While the stockholder is the nominal plaintiff, the suit involves only the rights of the corporation, and whatever relief is given, is obtained for it and in its name, and although the stockholder may ultimately benefit by the judgment, the corporation is the party directly interested. *Byers v. Rollins,* 13 Colo. 22, 21 Pac. 894; *Peck v. Peck,* 33 Colo. 421, 80 Pac. 1063;

*Mackey v. Burns,* 16 Colo. App. 6, 64 Pac. 485; *Starr v. Heald,* 28 Okla. 792, 116 Pac. 188; *McCloskey v. Snowden,* 212 Pa. 249, 761 Atl. 796, 108 Am. St. 867; *Smith v. Ferris,* 51 Pac. 710; *Kessler v. Ensley,* 148 Fed. 1019, 79 C. C. A. 534.

3. A majority of the court are of the opinion that this suit should be reversed and dismissed for the following reasons: First, to authorize plaintiff Jewett to maintain this action, he must show that the board of directors refused to bring the suit, and that he has done all in his power to obtain relief through the stockholders and failed; in other words it must be shown that relief cannot be obtained through the corporation. *Deveny v. Hart Coal Co.,* 63 W. Va. 650, 60 S. E. 789; *Foote v. Cunard M. Co.,* 17 Fed. 46; *Dimpfell v. Ohio & C. Ry. Co.,* 110 U. S. 209, 28 L. Ed. 121, 3 S. C. Rep. 209; *Taylor v. Holmes,* 127 U. S. 489, 32 L. Ed. 179, 8 S. C. Rep. 1192; *Beshoar v. Chappell,* 6 Colo. App. 323, 40 Pac. 244; *Wenzel v. Brewing Co.,* 48 S. C. 80, 26 S. E. 1; *Dillon v. Lee,* 110 Ia. 156, 81 N. W. 245. The evidence fails to show that Jewett made any demand or request upon the corporation to bring this suit or that he appealed to the stockholders for relief. Instead of that, the bringing of the action seems to have been kept a secret and sprung as a surprise. Plaintiff failed to aid the secretary in calling a stockholders' meeting, and did not attend the two or three which were attempted to be held. He made no request of Mr. or Mrs. Blanchard to reconvey the property to the company, nor upon the corporation or board of directors to bring a suit for its recovery. Second, this suit was not brought with due diligence. The stockholders' meeting which elected directors and instructed them to deed the property to Blanchard was held in May, 1898, and was attended by Robbins, the executor of the Hugh Jewett estate. He refused to vote the Jewett stock at this meeting, thereby

preventing a majority of the stock veing voted, and yet he heard and knew what was done, and asked to be kept informed of all subsequent proceedings. The directors who were elected at this meeting, met on the 16th of the same month, and carried out the instructions of the voting stockholders, by deeding the property to Blanchard on the 17th. Every stockholder was immediately thereafter informed of the transaction, and under the circumstances of this case there cannot be a particle of doubt but Jewett was fully informed and knew at the time of all that transpired. He commenced this suit January 23, 1902, almost four years after the transaction, which was an *intra vires,* not an *ultra vires* act of the corporation. The deed was not void, but at most was only voidable, and the transaction, though irregular, could be acquiesced in by the stockholders. Jewett cannot maintain this suit if he acquiesced in what was done, or did not act promptly in bringing his action. Ill health, and Blanchard's death, are pleaded as excuses for his delay in bringing the suit; but these excuses are not sustained by the evidence, which shows that his health was restored, and was good in October, 1898, and remained good thereafter for over three years before he instituted the action. Blanchard died October, 1900, more than two years after the company's deed to him, and the suit was not brought until almost two years after Blanchard's death. In January, 1900, at New York, Jewett made a proposition to Mr. Blanchard looking to a partnership with him in the development of this property, and after returning to Colorado Springs, on January 22, 1900, he submitted in a letter a proposition on which he was willing to join Blanchard, providing the latter could maintain the title. In 1901, after Blanchard's death, he visited Mrs. Blanchard in New York City, and had an interview with her there about entering into some kind of an agreement, upon

an equal basis, regarding the property, and came to
Colorado to look it over for that purpose, and agreed
to notify her of his decision. He had been fully advised
of the conditions for almost four years, and it is a strict
rule, especially as to property with a fluctuating value
such as mining claims, that in order to obtain relief of
this character, one must act promptly. We are of the
opinion that under the circumstances of this case, the
suit was not brought with that diligence which the law
requires, and that plaintiff by his conduct must be held
to have acquiesced in the transaction. 2 Pomeroy Eq.
Jur. §§ 917, 965; 5 Pomeroy Eq. Jur. § 303; 2 Beach on
Corporations, § 433; *Bell v. Hudson,* 73 Cal. 258, 14 Pac.
791, 2 Am. St. 791; 2 Am. St. (note) 791; *German Am.
Sem. v. Kiefer,* 43 Mich. 111, 4 N. W. 636; *Hoyt v.
Latham,* 143 U. S. 553, 36 L. Ed. 259, 12 S. C. Rep. 568;
*G. W. M. Co. v. W. of A. M. Co.,* 14 Colo. 90, 23 Pac.
908; *Hall v. Nash,* 33 Colo. 507, 81 Pac. 249.

4. I am authorized to state that Mr. Justice Gabbert
is of the further opinion the suit cannot be maintained in
Colorado by the plaintiff on behalf of the corporation for
the reason that the corporate existence of the Rome Min-
ing Company expired by limitation in this state before
the action was commenced. By section 499, Mills. Ann.
Stats., foreign corporations are permitted to do business
in this state by complying with the laws relative to such
corporations, and are subject to ''all the liabilities, re-
strictions and duties which are or may be imposed upon
corporations of like character organized under the gen-
eral laws of this state, and shall have no greater or other
powers.'' A foreign corporation transacting business
here, is subject to the same rules, regulations and restric-
tions applicable to domestic corporations, one of which is,
that its corporate existence in this state shall not exceed
20 years from the time of filing its certificate of incor-
poration with the secretary of state, unless thereafter re-

newed, and there being no renewal here, the corporate existence of the company in this state had expired when this suit was instituted. Its corporate entity, so far as this state was concerned, was ended, and no action could be maintained here by it or on its behalf.—*Iron S. M. Co. v. Cowie,* 31 Colo., 450, 72 Pac. 1067; *Hawley v. Bonanza Co.,* 61 Wash., 90, 111 Pac. 1073; *Nat. Bank v. Colby,* 21 Wal:, 609, 22 L. Ed. 687; *State ex rel v. University,* 115 Tenn., 238, 90 S. W. 244; *Crossman v. Vivienda W. Co.,* 150 Cal., 575, 89 Pac. 335.

5. The writer is of the opinion that the Rome Mining Company was a foreign corporation when the suit was brought, and that the district court in the exercise of its discretion should have refused to have entertained jurisdiction in the case, on account of its interference with the internal management of the affairs of a foreign corporation. I think the law is well settled that a court will not, in a minority stockholder's suit, exercise the power of determining rights of a foreign corporation which depend on the internal management of its affairs. *Madden v. Electric Light Co.,* 181 Pa., 617, 37 Atl. 817, 38 L. R. A. 638; *McCloskey v. Snowden,* 212 Pa., 249, 61 Atl. 796, 108 Am. St. 867; *Wilkins v. Thorne,* 60 Md., 253; *North State Co. v. Field,* 64 Md., 151, 20 Atl. 1039; *Condon v. Mutual Res. Assn.,* 89 Md., 99, 42 Atl. 944, 44 L. R. A. 149, 73 Am. St. 169; *Jackson v. Hooper,* 76 N. J. Eq., 592, 75 Atl. Rep., 569, 27 L. R. A. (N. S.) 658; *Berford v. Iron Mine,* 56 N. Y. Sup. Ct., 236, 4 N. Y. S. 836; *Howard v. Mutual Assn.,* 125 N. C. 49, 34 S. E. 199, 45 L. R. A., 857; 19 Am. & Eng. Ann. Cases, 84.

The rule is laid down in the last citation as follows:

"The rule has been stated in numerous cases that it is not within the judicial province of a court of one state to interfere with, supervise, or direct the internal affairs and management of a corporation existing by virtue of the laws of another state; or, in other words, that a court

will not take jurisdiction of the internal affairs of a foreign corporation.''

If the suit had the effect of determining a right which depended on the internal management of its affairs, the court should not have entertained it. The courts are equally harmonious in their definition of what constitutes interference with the management of the internal affairs of a foreign corporation. The syllabus of an opinion of the Court of Errors and Appeals of New Jersey, written by Judge Dill, states the definition as follows:

''Where an act complained of affects complainant solely in his capacity as a member of a corporation, whether as stockholder or officer, and is the act of the corporation whether acting in stockholders' meeting or through the board of directors, such action is the management of the internal affairs of a corporation.''—*Jackson v. Hooper, supra.*

But there are limitations upon the rule and its definition, and the authorities may be grouped into two classes; those coming within the rule, and those falling within its limitations. If there is any apparent conflict, it comes from not distinguishing in which class a case falls. Cases coming within the limitations will usually be found to have some of the following characteristics: (1) Cases where the stockholder's right is contractual, or (2) cases that affect him individually and not in his capacity as a stockholder or member of the corporation, or where he is affected in some peculiar manner; or (3) cases where the suit is brought for an accounting of funds converted, appropriated or embezzled, as in the case of a defaulting officer; or (4) cases to compel restoration of specific property, fraudulently appropriated, where the wrongdoer is personally subject to the jurisdiction of the court in which the suit is brought and relief can be afforded by acting directly on his person. An

examination of the authorities cited by defendant in error will show, I think, that instead of coming within the rule, this case falls within the limitations.

In *Babcock v. Farwell*, 245 Ill., 34, 91 N. E. 683, 137 Am. St. 284, 19 Ann. Cas. 74, the court speaking in that case said:

"But here the relief sought substantially amounts to requiring *resident* directors to restore to it such sums of money as upon an accounting they shall be found to have unlawfully diverted and retained from it."

Which brings that case within the limitations. In the same case, speaking of actions to compel the restoration of property fraudulently appropriated, the court used this language:

"The corporation under such circumstances, may maintain a suit against the defaulting directors wherever they may be found, and there is no good reason why a stockholder who seeks to enforce precisely the same rights in favor of the corporation may not maintain a similar suit. Accordingly actions by minority stockholders in foreign corporations to redress grievances in corporate management have been sustained where the court obtained jurisdiction of the persons of the necessary parties and the relief sought could be accomplished by acting directly on the persons of the defendants. Where minority stockholders seek to have restored to the corporation property fraudulently appropriated to their own use by directors who, together with the corporation itself, are personally subject to the jurisdiction of the court, we think it is the better doctrine that the court should exercise its jurisdiction for the determination of the controversy."

*Wineburgh v. United States Co.*, 173 Mass., 60, 53 N. E. 145, 73 Am. St. 261, was an action against an officer of a foreign corporation domiciled in that state, for money

embezzled, and involved no question of internal management.

*Harding v. American Glucose Co.,* 182 Ill., 551, 55 N. E. 577, 64 L. R. A. 738, 74 Am. St. 189, was a case where a foreign corporation was attempting to avoid an Illinois statute by doing a thing not permitted by a domestic corporation, and in no way involved internal management.

In *Pinney v. Nelson,* 183 U. S., 144, 46 L. Ed. 125, 22 S. C. Rep. 52, the stockholders of a Colorado corporation organized exclusively to do business in California, were held by their acts to have submitted themselves to personal liability in the latter state. The internal management of the affairs of the Colorado corporation was not involved.

*Guilford v. W. U. Tel. Co.,* 59 Minn., 332, 61 N. W. 324, 50 Am. St. 407, was a case where a stockholder brought suit to compel the company to issue him a new certificate for one that had been lost. The court found and stated that it involved only his individual rights under a contract upon which the stock was issued, and in no way interfered with the internal management of the corporation.

A ground for bringing the suit here is that the property is situated in Park county. That makes no difference. In *Madden v. Electric Light Co., supra,* a case similar to this in many respects, it is said:

"It is immaterial that the visible, tangible property of the foreign corporation is situate within the state."

In my judgment, this case falls squarely within the rule, and not within any of the limitations or exceptions. No contractual right of Jewett with the company is involved, and he is not affected individually or in any peculiar way from the other stockholders. It is the corporation that is affected. The suit is not for an accounting for funds or property fraudulently converted, ap-

propriated or embezzled, and is not brought at the domicile of the defendant to compel the restoration of specific property fraudulently appropriated.  It is not based on fraudulent conversion, mis-appropriation, defalcation or embezzlement.  The relief sought cannot be accomplished by acting directly on the person of the defendant.  The act complained of affects the plaintiff solely in his capacity as a stockholder, in common with the other stockholders.  The deed is not void on its face; it conveys the legal title and grows out of *de facto* corporate action, though it may be voidable in a proper suit brought in New York to have it determined void.  The transaction was carried on and consummated in good faith.  I think the deed is an incident to corporate action and the suit is to test the validity of corporate acts which affect rights that depend upon corporate management.

Reversed and remanded with directions to dismiss.

*Reversed.*

Decision *en banc.*

Mr. JUSTICE BAILEY and Mr. JUSTICE HILL not participating.