No. 19926.

JOE ROSENTHAL *v.* FOUR CORNERS OIL &
MINERALS CO., ETC.
(403 P.2d 758)

Decided April 5, 1965.     Rehearing denied August 3, 1965.

2

GELT & GROSSMAN, PERCY S. MORRIS, RUSSELL W. BARTELS, for plaintiff in error.

McNICHOLS, NEVANS & WALLACE, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THE parties are here in the same order as they appeared in the trial court. We will refer to them as they were there aligned or by name.

Plaintiff brought two actions against defendant. They were consolidated for trial but separate judgments were entered against Rosenthal in the respective cases, and he sued out separate writs of error to each. This writ of error is directed to the judgment in case No. B-24601 in the Denver District Court dismissing Rosenthal's claim as sole fiscal agent for commissions on the sale of stock of Four Corners Oil & Minerals Co.

Defendant in this writ also assigns cross-error to the judgment of the court dismissing its counterclaim for return by Rosenthal of 31,875 shares of stock issued to him allegedly for equipment and machinery which, it was contended, he failed to deliver. The proceeds of the sale of such stock as Rosenthal had disposed of also were claimed.

We hold that the trial court was correct in entering the judgments dismissing the respective claims for relief of both the plaintiff and defendant.

We discuss first the judgment against Rosenthal.

Two points are relied upon by plaintiff in his argument for reversal of the adverse judgment: 1. That the court erred in consolidating the two causes of action in one trial; 2. That the court rewrote the contract between the parties and admitted parol evidence to alter the terms of a written instrument which was not ambiguous and which required no interpretation.

The first point on the question of consolidation requires but brief comment. A motion to consolidate is addressed to the discretion of the trial court. *Willy v. A. T. & S. F. Ry. Co.*, 115 Colo. 306, 172 P.2d 958. The contention that the court had abused its discretion in an arbitrary and capricious manner is not convincing. The claimed evidences of abuse are that the consolidation resulted in a lengthy trial in which there was a complication and confusion of the issues and an inter-

mingling of evidence, which Rosenthal argues was prejudicial to his cause.

While it is certainly true that the trial was lengthy — we were confronted with eight volumes consisting of 4127 folios — Rosenthal was responsible for much of the drawn out record; he had to be constantly admonished by the court to limit his responses, to stop making speeches and to confine himself to answering the questions asked. It also is to be noted that the motion to consolidate was granted in the preliminary stages by a judge of the court who did not try the case; the decision was, therefore, predicated on the briefs and the pleadings wherein the allegations of the complaint and answer appeared to present identical questions of fact and law.

Rosenthal's position as director in Four Corners appeared, on the face of the pleadings, to present in both cases questions of law concerning his fiduciary capacity and the duty owed to the corporation by reason thereof. That the case upon trial turned on another matter, and was decided on an absence of contract, does not support a contention of abuse of discretion. It cannot be denied that the transactions sued upon were different, but this fact alone should not prevent the trial court from granting the motion where other valid reasons exist, such as the identical parties in each suit, common questions of laches and estoppel in each case, and the fiduciary issue. Moreover, no prejudice to Rosenthal has been shown. The trial was to the court, and the judge was painstakingly scrupulous in clearly delineating the issues and weighing the evidence as it applied to each case. The court's findings of fact and conclusions of law show that it properly sifted the evidence, had a complete understanding of the issues and correctly applied the law to the issues presented.

We now comment on the court's treatment of the contract. The court did not rewrite it or vary its terms. The court merely found that the contract did

not apply to the transaction upon which Rosenthal had based his claim. The agreement sued upon was embodied in the minutes of a special meeting of the directors of the Four Corners Uranium Corporation which was held on March 25, 1950. At that time the *directors* unanimously adopted a resolution as follows:

"BE IT RESOLVED: that the sale of stock by Joe Rosenthal and his authority to sell said stock be unrestricted as to any amount sold or to be sold; that Joe Rosenthal is hereby acknowledged to be the sole fiscal agent in control and charge of the sale of the shares of stock of this corporation and that a percentage of 25% for the sale of shares be received whether such shares of stock are sold for cash or any equivalent values or in exchange for stocks, bonds, machinery, equipment or any other thing of equivalent value; and further that in the event the Articles of Incorporation should be amended or the capitalization increased and new stock issued and sold then the authority of Joe Rosenthal to sell such shares and his percentage on the sale of such shares shall be on the basis of 25% and in accordance with this resolution; that this resolution shall extend until December 31, 1952."

There is no dispute that the board's action was confirmed by a letter to Rosenthal, and the defendant does not deny the agreement. It does not deny that Rosenthal acted on this contract and did sell stock and was paid commissions thereon, but the transaction on which Rosenthal claims a "sale of stock" pursuant to his capacity as fiscal agent is best described by the trial court in its findings of fact. These findings and the evidence upon which they are predicated are not only undisputed, but are Rosenthal's own explanation of the circumstances surrounding the deal. The court said:

"* * * there is a cogent and compelling reason which drives the Court to the conclusion that the transaction upon which the commission is sought is not within the terms of the resolution and the written memorandum

confirming it. It appears from the evidence (and here we are in the realm of almost agreement between the parties) that the company had not been doing well and had practically no cash with which to work. There was dissatisfaction with the management of the company and general discouragement with the future. Along about this time, Rosenthal met Eugene Sanders, who was the managing officer of Silver Bell Mines and was receiving much publicity and notices about his management abilities. Rosenthal was impressed with Sanders and talked with him about coming into Four Corners and taking over its management. He talked with the other directors about his feeling that Sanders had the ability and experience to put the company on a paying basis. Rosenthal testified at the trial that he felt that bringing Sanders into the management would advance the profits of the company, and the holdings of the stockholders, of which he was one.

"Sanders, however, refused to come into the company unless he had stock control; and to this end, it was arranged to transfer to Silver Bell Mines (in which Sanders was controlling stockholder) 261,000 shares of Four Corners stock for 87,000 shares of Silver Bell stock. Incidental to the deal, Sanders also required that the original stockholders give up a large share of their Four Corners stock to him in exchange for 1,000 shares each of Silver Bell stock. Out of this side deal, Rosenthal got at least 20,000 shares of the Four Corners stock given up by the other stockholders.

"The evidence in the case leads the Court to the inescapable conclusion that the transaction for which Rosenthal seeks his twenty-five per cent commission is not a "sale of shares" within the terms of the agreement, the consideration for which is stock in another company, but, rather, an exchange of shares between the companies for the purpose of getting new management into the company for the purpose of bringing to life the sagging fortunes of the company."

The agreement which Rosenthal had as fiscal agent was such that it was continuously in effect until December 31, 1952, and required no further action of the board. The stock available for sale was not stock in the hands of any of the directors or other stockholders, but was that authorized for over the counter sales to the general public. The Silver Bell deal was a merger of management of two corporations. The resolution upon which Rosenthal relies could not have been used as corporate authority for the action taken. What was required by Sanders and Silver Bell was so different from the general power given to Rosenthal to sell stock that it required a special *meeting* of the *stockholders* on March 31, 1952. As was noted by the court, it required the giving up by the directors and principal stockholders of their holdings in Four Corners and the receiving back of shares in Silver Bell. It required a relinquishment by the stockholders of their preemptive rights and the transfer of control to Silver Bell. This controlling stock then, plus the necessary new issue to increase the capitalization, is not the stock authorized to be sold by the resolution, and the 87,000 shares of Silver Bell received back by the *stockholders* is not the kind of consideration *to the corporation* upon which the 25% commission can be calculated.

The subject transaction had none of the earmarks of a sale covered by the agreement. What was bargained for and obtained was new management and a blood transfusion to an anemic corporation. The conditions set down by Sanders could not have been met under the authority given Rosenthal by the resolution that he deems controlling. True, the resolution mentions the issue of new stock, but does not cover a merger agreement whereby the existing stockholders gave up their preemptive rights and lost control of the corporation. Rosenthal got 20,000 shares of stock from the deal. This is something to which he was not entitled if the agreement for commission were controlling.

There is one other fact that stands out. The special stockholders meeting which was necessary in order to negotiate and complete the Silver Bell deal authorized the *board of directors* to negotiate with the Silver Bell for the stock transfer. At the meeting they passed a resolution that the *executives* take such steps as are necessary to negotiate the deal, and the *executives* were expressly prohibited from executing a final contract until all waivers of the preemptive rights were in the hands of the company. Obviously, neither this particularly authorized negotiation nor the execution of the final contract, nor the obtaining of the waiver of preemptive rights could be accomplished by "the sole fiscal agent Rosenthal" under the agreement he had with the directors.

We now comment on the court's treatment of the counterclaim. On the Four Corners' assignment of error the court entered the following findings of fact and conclusions of law:

"The defendant Four Corners has filed as a counterclaim in the first action a claim that the plaintiff was issued 31,876 shares of the stock of the corporation for no consideration or for services which he did not render.

"The stock was issued by the corporation to the four incorporators for the mining claims which were turned over to the corporation shortly after its incorporation and which were the main asset of the corporation. Rosenthal, as one of the four grantors of this property, received the 31,876 shares for his interest in the mining properties. It is true that prior to the consummation of this transaction, that is, the conveyances by the grantors and the issuing of the stock to them, a tentative plan had been submitted on behalf of the corporation to the Securities Commission, in which it suggested that it would purchase the properties from three of the incorporators and that Rosenthal's contribution was to be services rendered and the furnishing of machinery in return for the stock issued to him. This proposed plan was not

approved by the Securities Commission, and it never became the agreement of the corporation with the original incorporators.

"The agreement which the corporation finally entered into with its incorporators, and the only agreement which was actually entered into, the Court finds, is the agreement by which the corporation purchased the interests of the four incorporators in the mining properties in return for the issuance of 31,876 shares to each of the four owners of the mining properties.

"The Court, therefore, finds that the allegations of the counterclaim are not sustained."

It is to be noted that the allegations of Four Corners is that the stock was for certain machinery and equipment which Rosenthal failed to furnish and that the stock he received was without consideration. The court held that the defendant failed to sustain the burden of proof on these allegations and specifically found that the shares were paid to Rosenthal for his interest in mining properties which he transferred to Four Corners. The question then presented here is simply, "Does the evidence support the findings of the Court?" We hold that it does and that the findings were supported by deeds covering the claims to the Four Corners as well as action by the board of directors as shown by their minutes.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE not participating.