No. 20,259.

Geraldine B. Swafford, et al., v.
William R. Berry, et al.
(382 P. [2d] 999)

Decided June 24, 1963.

Mr. Leslie A. Gifford, for plaintiffs in error.

Messrs. Boyle & Witty, for defendants in error.

*In Department.*

Opinion by Mr. Justice Pringle.

This action was instituted by Geraldine Swafford and Marion Whittle "representatively and derivately on their own behalf and on behalf of all other stockholders * * * similarly situated," against William Berry, William Berry, Jr., Gerald Berry and Daniel Berry, a minor, as individual defendants, and Monarch Winter Sports, Inc., as corporate defendant. The parties are aligned here as they were in the trial court and will be referred to as plaintiffs, defendants, or by name.

The evidence disclosed that in 1954 William Berry, Sr., was operating the Monarch Ski Area for the City of Salida. In 1956 he purchased the city's interest in the area for a consideration of $100.00 for which he received two rope tows, a toboggan, the main lodge building and other equipment. In the same year he acquired a use permit from the United States Forest Service to operate the 130-acre tract as a recreational facility. William Berry, Sr., and his three sons, the individual defendants,

then began to operate the area as a family business. They cleared trails, burned brush, cut trees to enlarge the parking and the ski areas, repaired the buildings, worked on the ski lift equipment and gave practically their entire time to the operation and development of the area. They purchased various items necessary for the proper operation of the enterprise and the work necessary for the transporting and renovating of these items was performed by them. This individual effort resulted in large savings; for example, a contract to purchase a chair lift was negotiated with one Irvin at a cost of $25,000. A similar lift purchased in Denver would have cost between $180,000 and $200,000. A second use permit was obtained from the United States Forest Service, this time covering an area of 760 acres. Gross revenue increased from $870 in 1956 to $17,000 in 1960.

In 1959, the Berry family incorporated the enterprise with an authorized capital of 25,000 shares of no par common stock. The incorporators consisted of the Berry family and one Arleigh Neighbors. No stock was ever issued to Neighbors, and William Berry, Sr., and his sons became the sole directors. The assets of the ski operation were not transferred to the corporation at this time.

Plaintiff Whittle had resided in the Salida area since June 1954 and operated a small restaurant there. Plaintiff Swafford was the Postmaster at Garfield, Colorado, which is in the immediate vicinity of the ski area. In April 1960, conversations took place between the Berrys and the plaintiffs concerning the purchase of stock in the corporation by the plaintiffs. William Berry, Sr. testified that before any agreement was reached on the part of the plaintiffs to purchase the stock he informed them that if they purchased the stock he and his sons planned to transfer the assets of the ski operation to the corporation in return for 10,000 shares of the capital stock.

Plaintiff Swafford testified that prior to purchasing the stock she was informed that the Berrys expected to obtain 10,000 shares of the capital stock in return for the transfer of the assets of the business to the corporation. Plaintiff Whittle testified that the costs of the individual items of that property were not made known to Swafford and her, but that they had a round figure given to them. After these discussions the plaintiffs co-signed a subscription agreement by which they agreed to purchase 2,500 shares of no par common stock at $10.00 per share. The corporation had an option to cancel the agreement at any time as to any amount of stock for which payment had not been made. On July 6, 1960, plaintiffs paid $4,000, and in August or September, 1960, they made two further $500 payments, whereupon a certificate for 500 shares of stock was delivered to them. On August 22, 1960, Whittle made a loan of $15,000 to the corporation secured by a chattel mortgage on the assets of the corporation. Both plaintiffs were elected to the board of directors on September 8, 1960, and have served on the board since that time.

Meanwhile, on June 1, 1960, the Berrys had transferred the ski business with all its assets to the corporation and received in exchange therefor 10,000 shares of common stock. At that time, the only stockholders and the only directors of the corporation were the Berrys. The plaintiffs at that time had entered into a subscription agreement but had not yet paid money on their subscription which would entitle them to receive any stock.

In 1961, one Ogilvie was given stock in exchange for services rendered to the corporation. This was voted upon and approved by all of the directors, including plaintiffs. Early in 1961, the directors voted to raise the price of the stock from $10 per share to $12 per share. The record discloses that when the matter of raising the price of the stock was discussed at a director's meeting, both plaintiffs thought that $12 per share

was too low based on the assets which the corporation had received from the Berrys. In July or August of 1961, 100 shares of stock were sold to a Dr. Farabaugh and another 100 shares to a Bud and Shirley Lee at $12 per share.

On August 9, 1961, the plaintiffs brought this action in the district court, alleging, so far as is material here, that in selling the property to the corporation the individual defendants had violated their fiduciary duties and perpetrated a fraud upon the corporation and its stockholders and had realized a "secret profit" as a result of the sale. They further alleged that they had made no demand upon the board of directors to bring an action to obtain redress of these wrongs to the corporation because such a demand would be futile and useless. They requested the court to require the defendants to surrender the common stock issued to them in payment for the property transferred to the corporation to the extent of any secret profit realized by the defendants.

An answer was filed by the defendants denying any secret profit or fraud. The answer alleges that the defendants had offered to repurchase the stock owned by the plaintiffs for the same amount for which it was originally purchased plus a reasonable amount of interest. The defendants also alleged that the plaintiffs and each of them had full knowledge at all times of all the transactions of which they complained, and that they had participated in and consented thereto. As a further defense it was alleged that the property transferred had a value in excess of $100,000 at the time of transfer and a value in excess of $400,000 at the time of the filing of the complaint.

Upon a motion to dismiss at the close of the plaintiffs' case, the trial court found that a full disclosure had been made to the plaintiffs; that no secret profit was realized and that the transaction was fair. The court further found that the value of over $100,000

placed on the property by the defendants was fully justified; that no damage resulted to the corporation from the transaction; and that there was no showing of bad faith on the part of the individual defendants. Judgment was thereupon entered for the defendants and plaintiffs seek review here by writ of error.

Plaintiffs contend that the evidence disclosed as a matter of law that the individual defendants had perpetrated a constructive fraud on the corporation and that as a result the court erred in dismissing the plaintiffs' action.

██ Promoters or directors who deal with a corporation which they are promoting or in which they are directors are, of course, in a fiduciary relationship with the corporation, Anno. 18 L.R.A. (N.S.) 1106, 1107. Such relationship, however, does not prevent the director or promoter from doing business with the corporation at a profit, 13 Am. Jur. *Corporations*, §1005, p. 958, and where, as here, the stock of the corporation is closely held at the time of the transaction, there is no requirement, as plaintiffs contend, that an independent board of directors approve such a transaction. See *Old Dominion Copper Mining & Smelting Co. v. Lewisohn*, 210 U.S. 206, 52 L. Ed. 1025, 28 S. Ct. 634. However, to withstand a later attack by the corporation, the transaction must be accompanied by a full and fair disclosure of the material facts to those who are shareholders of the corporation at the time of the transaction, and it must not be attended with unfairness or fraud.

██ The plaintiffs here were the only persons other than the Berrys with an interest in the corporation at the time the transaction in question took place. They knew generally what the assets of the ski area were. They were told in round figures of the cost and they knew the Berrys had put in much work in building up the enterprise from a desultory operation in 1954 to a successful and highly promising business in 1960. They

had been told that the Berrys were going to get 10,000 shares of stock for the property which would be transferred to the corporation. All these material facts of the transaction were known to the plaintiffs before they purchased their stock. Moreover, the cost of the property to the Berrys and the fairness of the transaction cannot be determined by measuring only the out-of-pocket expenditures made by the Berrys, for they had spent years of hard work in developing, maintaining, rebuilding and extending the ski area and the business. There was competent evidence to support the trial court's findings that there was no *secret* profit and that the transaction was accompanied by full disclosure and fairness to all concerned. Under such circumstances, we will not disturb the findings of the trial court. *Dollison v. Cook,* 147 Colo. 453, 364 P. (2d) 207.

Stockholders' suits on behalf of a corporation are entertained only in *equity,* 13 *Fletcher Cyclopedia Corporations* (Perm. Ed. 1961 Rev. Vol.) §5944, p. 418, and equity has always demanded certain minimum standards of those who seek relief in its forum. Thus we find it is the general rule that a shareholder who, with knowledge of the material facts, has consented or acquiesced in the transaction of which he complains ordinarily cannot attack the transaction on behalf of the corporation. *Holmes v. Jewett,* 55 Colo. 187, 193, 134 Pac. 665; *Gallup v. Pring,* 108 Colo. 277, 280, 116 P. (2d) 202; *Gottfried v. Gottfried,* 112 N.Y. Supp. (2d) 431; *Johnson v. King-Richardson Co.,* 36 F. (2d) 675 (1 Cir.); Anno. 16 A.L.R. (2d) 467; 13 *Fletcher Cyclopedia Corporations* (Perm. Ed. 1961 Rev. Vol.) §5862, p. 260; 13 Am. Jur., *Corporations,* §469, p. 512. By purchasing their shares in the corporation after being fully apprised of the details of the transaction which the Berrys contemplated, the plaintiffs consented to or acquiesced in the transaction. We are led to the inescapable conclusion that these plaintiffs had no stand-

ing to obtain the relief they sought here. The trial court was correct in dismissing the action at the close of the case made by plaintiffs.

The judgment is affirmed.

MR. JUSTICE MOORE and MR. JUSTICE DAY concur.