No. 19927.

JOE ROSENTHAL *v.* FOUR CORNERS OIL & MINERALS CO., ETC.
(403 P.2d 762)

Decided May 3, 1965. Rehearing denied August 3, 1965.

GELT and GROSSMAN, PERCY E. MORRIS, RUSSELL W. BARTELS, for plaintiff in error.

McNICHOLS, NEVANS & WALLACE, JOSEPH F. NIGRO, for defendant in error.

*En Banc.*

MR. JUSTICE DAY delivered the opinion of the Court.

THIS is a companion suit to case No. 19926, decided on April 5, 1965. The two cases were consolidated for trial, but separate writs of error were issued out of this court.

Plaintiff in error Joe Rosenthal was the plaintiff in the trial court. We will refer to him as Rosenthal. We will refer to the defendant in error as Four Corners. There are others who are not parties to the suit to whom it will be necessary to refer. They are Silver Bell Mining Company, which will be referred to as Silver Bell, and E. H. Sanders, President of both Four Corners and Silver Bell, who will be referred to as Sanders.

This suit was instituted by Rosenthal claiming 40,000 shares of Four Corners common capital stock which, it is alleged, he owns and which he claims Four Corners

has failed, neglected and refused to deliver to him. On the basis of the stock value of $7.10 per share at the time asserted delivery should have been made to Rosenthal, he claims damages in the amount of $284,000.00 with interest at the rate of 6% per annum from January 31, 1955.

At the time Rosenthal contends that he was entitled to the 40,000 shares of stock, and at all times during the transaction upon which his claim is predicated, Rosenthal was a director and officer of Four Corners. Silver Bell had acquired control of Four Corners, and Sanders, the President of Silver Bell, had been elected President of Four Corners.

For the facts surrounding the transaction and for the role that the parties played therein, we can do no better than reiterate the findings of the trial court which contain as full a statement as can be made:

"The matter before the Court arises by reason of two lawsuits filed by the plaintiff Joe Rosenthal against the Four Corners Uranium Corporation. In the first suit, he seeks a commission on a transaction involving an exchange of Four Corners stock for Silver Bell Mining Co. stock. In the second action, he contends that Four Corners converted to its own use 40,000 shares of its stock which were the property of Rosenthal.

\*　\*　\*

"Rosenthal contends in his second lawsuit that the company owes him $284,000.00 for stock at $7.10 per share, which he claims was his and which the company refused to deliver to him. In the early summer of 1952, Rosenthal was negotiating for some claims known as the Swenson Claims. At this time, and at all times during which the transactions occurred out of which Rosenthal claims his ownership of the stock is based, Rosenthal was a director and officer of Four Corners.

"Rosenthal testified that he had in mind reselling the claims to Four Corners because he felt they were good

properties which would be of benefit to the corporation. While negotiating, he told Sanders of the deal and Sanders advanced at least $19,000.00 to consummate the purchase of the properties, the total purchase price of which was $20,000.00, so that actually the evidence shows that at best Rosenthal had only $1,000.00 invested. Rather than offer the properties directly to Four Corners, however, Sanders and Rosenthal determined to transfer the properties to Silver Bell and have Silver Bell offer to sell the properties to Four Corners for 160,000 shares of Four Corners stock, 60,000 shares of which were to go to Rosenthal. Sanders testified that actually he was to split with Rosenthal, but that he recanted when advised by his lawyers that he could take no profit out of the sale unless complete disclosures of his interest were made to the stockholders. Sanders also testified that he told Rosenthal about the lawyers' opinions, but Rosenthal categorically denies this.

"At any rate, notice was given the stockholders that action was to be taken on the proposed purchase of the Swenson Claims for 160,000 shares of Four Corners stock, but no notice was given that Rosenthal was to receive 60,000 shares of the 160,000 shares so paid, nor was such disclosure to the stockholders made by Rosenthal or Sanders at the meeting of August 11, 1952, at which time both were directors of the company and were actually present. The stockholders were advised at the meeting that Silver Bell would retain only 100,000 shares of the 160,000 shares. At the time of the meeting, Silver Bell did not have title to the Swenson Claims.

"The purchase was approved by the stockholders and the 160,000 shares were later transferred to Silver Bell in exchange for a deed from Silver Bell. Thereupon, Silver Bell transferred 60,000 shares to Rosenthal. Rosenthal presented these shares to Four Corners, received 10,000 shares, and directed that 10,000 shares be transferred to Sanders, leaving 40,000 shares with Four Corners. It is these 40,000 shares upon which Rosenthal

bases his claim. The company contends Rosenthal is not entitled to these because (1) he made no disclosure to the stockholders that he was to receive 60,000 shares of the 160,000 paid, and (2) that he agreed to return the 40,000 shares to the treasury as a result of conversations with Sanders when Sanders told him he could have none of the 60,000 shares because of the opinion from Sanders' attorney that neither he nor Sanders was entitled to a profit because they failed to disclose that they would ultimately receive the 60,000 shares.

"Sanders testified that he agreed with Rosenthal that Rosenthal would take 10,000 of these shares and Sanders would take 10,000 of these shares to repay him for the money he had advanced for the purchase of the properties, and that the remaining 40,000 would be returned to the treasury. He testified that this was done and the books so show it. Rosenthal denies such an agreement and states that the first time he knew of anyone's claiming the 40,000 shares were returned to the treasury was when he read it in a prospectus in 1955. * * *

 * * *

"Here we have a suit in which the plaintiff, who has already received a 10,000-share profit, is seeking to recover the rest of the shares which he claims are due him from the company, all 40,000 of which would be profit to him since he had furnished none of the money for the purchase of the properties. Counsel suggests that the defendant should offer to return the property to Rosenthal if it wishes to retain the 40,000 shares; but the evidence shows Four Corners paid, not 60,000 shares, but 160,000 shares for the properties, and to Silver Bell, not to Rosenthal.

"It is the Court's opinion that Rosenthal here seeks to recover that to which he is not entitled, upon which he has no claim, it being a secret profit, and that, therefore, the Court will leave the parties in the situation in which it finds them.

"Counsel suggests Rosenthal had no duty under the

circumstances here to make any disclosures concerning his ownership of the property or that he was to get 60,000 shares out of the transaction. They contend that the Court's only authority here is to scrutinize the fairness of the transaction and cite, in support of the fairness of the proposition, that the stock of the company immediately rose in value. But the Court must point out here that Rosenthal and Sanders, both directors and officers of Four Corners, Sanders being also an officer and director of Silver Bell, arranged the plan by which Four Corners would pay 160,000 shares of its capital stock to Silver Bell for property which was purchased for $20,-000.00 and for which Rosenthal expected only 60,000 shares.

"It is significant to the Court that Rosenthal and Sanders both failed to advise the stockholders of the corporation, to whom they owed the highest degree of loyalty, of the fact that either Rosenthal or Sanders was going to make a profit out of this transaction.

"The Court finds that this transaction was singularly lacking in the extreme measure of candor, unselfishness and good faith which our Colorado Supreme Court says should be present in dealings of directors with their corporation. The Court finds that under the circumstances of this case, the evidence of the plaintiff does not sustain the burden of proof of the necessary fairness and good faith of the transaction.

"Moreover, the Court is of the opinion that the circumstances surrounding this case, as shown by the evidence, indicate an acquiescence and agreement by Rosenthal to return the 40,000 shares to the treasury. These shares lay in the treasury of this company, without action being brought for their recovery by Rosenthal, from the summer of 1953 until March, 1959. If it be said that Rosenthal did not know of the company's claim in 1953, he did, according to the uncontroverted testimony, know of it in 1955, and still did nothing about it until March

of 1959; and he knew of it in May of 1958 when he filed his suit for commissions, at which time his break with the company was open, and still he did nothing about it until almost a year after that time.

"The surrounding circumstances indicate to the Court that Rosenthal, acting for himself, and Sanders, acting partially for himself and partially for the company, did enter into the agreement in 1953 in which the parties agreed to end their dispute over Rosenthal's being entitled to these shares by the return of 40,000 of the 60,000 shares to the treasury.

"The Court is of the opinion that Rosenthal cannot recover on his second claim."

To these findings and judgment of the trial court Rosenthal has assigned three points in his summary of argument:

I. Error by the court in consolidating the two cases for trial.

II. Error in the finding of the trial court that the issue as to the ownership of the 40,000 shares of stock was settled by agreement.

III. Error in holding Rosenthal, as a director, had a duty to disclose he had previously sold his own property to Silver Bell, which, in turn, sold the property to Four Corners.

In addition it is argued that even if Rosenthal had sold the claims directly to Four Corners, the required standards of disclosure were met; that Four Corners is barred by laches from claiming there was a failure to disclose, and that Four Corners cannot rescind the transaction by which it acquired the Swenson claims and retained its benefits.

We hold that the trial court did not err and that its judgment is correct. We now comment on Rosenthal's assignments and arguments in support of our decision.

I. *The Consolidation Of The Two Cases For Trial.*

■ Concerning the propriety of the court in consolidat-

ing the two cases for trial, see our opinion in *Rosenthal v. Four Corners,* 157 Colo. 1, 403 P.2d 758.

II. *The Finding Of The Trial Court That The Issue As To The Ownership Of The 40,000 Shares Of Stock Was Settled By Agreement.*

 We do not interpret the judgment of the court as being predicated upon accord and satisfaction or upon any agreement by the parties as to the return of 40,000 shares to the treasury. The holding of the court was that Rosenthal did not sustain the burden of proof devolving upon him to show that the transaction was fair and in good faith, and that he made full disclosure to his corporation, *Laybourn v. Wrape,* 72 Colo. 339, 211 Pac. 367. The trial court in its holding cited 19 C.J.S., Corporations, § 781, pointing out that in order for the transaction between the corporation and the directors to be upheld, "There must be full disclosure of the facts, * * *." Also in 19 C.J.S., Corporations, § 783, is the statement of the general rule that "The *burden* is on the director, officer, or agent to show the validity of the contract and the fairness and honesty of his dealings with the corporation, that he has gained no advantage therefrom, and that the corporation has not suffered thereby." (Emphasis supplied.)

An analysis of the evidence is that Rosenthal, while an officer of the corporation and with full knowledge that the corporation through Sanders would be interested and would purchase these claims, obtained them in his own name, with money advanced by Sanders to the extent of at least $19,000.00 and with only $1,000.00 of his own money. At a time when Rosenthal had not conveyed the claims to Silver Bell, and at a time when the claims had not yet been conveyed to Rosenthal, a stockholders meeting was held and 160,000 shares of Four Corners was pledged to Silver Bell for purchase of the Swenson claims. The Four Corners stockholders knew that out of the 160,000 shares 60,000 shares were

to be paid for the claims, but there was no disclosure that Rosenthal and Sanders were the ones to receive the 60,000 shares, and no disclosure was made that these same claims had been purchased for $20,000.00. It is also significant that Sanders was advised by an attorney that he could not participate in the secret profit of 60,000 shares without full disclosure. Rosenthal was told the same thing. Sanders, therefore, relinquished any claim to the shares except the 10,000 issued to him for reimbursement of the money advanced. If these shares became worth the amount that Rosenthal claims—$7.10 per share at the time he demanded delivery and for which he claims damages of $284,000.00—each of them received in excess of $70,000.00 in stock for their efforts in acquiring the claims.

Assuming, however, that it may also be said that the court made a finding of an agreement for the return of 40,000 shares to the treasury, the record supports such a finding. The books of the company show that for almost six years after the completion of the transaction Rosenthal as secretary-treasurer had full knowledge of the stock register. The company carried Rosenthal's stockholdings at 15,000 shares. The books also showed that the 40,000 shares had been returned to the treasury; they did not show them in Rosenthal's name or to be held subject to his order. If the books did not correctly show the stock ownership, it seems rather strange that no steps were taken by him as an officer, or by the directors, to have the same corrected over a period of six years.

III. *Error In Holding That Rosenthal, As A Director, Had A Duty To Disclose He Had Previously Sold His Own Property To Silver Bell, Which, In Turn, Had Sold The Property To Four Corners.*

The duty of Rosenthal has been discussed under Point 2 above. It is difficult to conceive how this assignment of error can be urged upon this court. In one portion of

the brief Rosenthal seems to recognize the law concerning the duty of a director as a fiduciary to his corporation and contends that the records show that there was sufficient disclosure to satisfy this rule. Under this assignment of error, in the face of all of the decisions to the contrary, Rosenthal claims that he had no such duty to his corporation because he was selling to Silver Bell and not to his own corporation. This argument is advanced in the face of the undisputed evidence that he knew and arranged with Sanders that the claims would end up in Four Corners by rerouting and arranging an indirect sale to Silver Bell. The documentary evidence of this is that the 160,000 Four Corners shares were authorized to be issued on August 11, 1952, to purchase the claims. Yet the claims were not conveyed to Rosenthal until August 20, 1952, and he conveyed the claims to Silver Bell on September 17, 1952.

The loyalty required of directors as fiduciaries of their corporation are clearly set forth in several decisions of this court, particularly in *Kullgren v. Navy Gas and Supply Co.,* 110 Colo. 454, 135 Pac. 1007, and *Hudson v. American Founders Life Ins. Co.,* 151 Colo. 54, 377 P.2d 391.

The argument of Rosenthal that Four Corners cannot keep the benefits of the transaction by retaining the claims but not accepting the burdens deserves but brief comment. The equitable maxim that Rosenthal would invoke here might have bearing in a suit for rescission, but that would be another law suit and not this one. Four Corners paid out 160,000 shares for these claims and, although receiving 40,000 shares back into the treasury, representing the profit to a director who is not entitled thereto, they still paid 120,000 shares for them—a very substantial consideration for the claims retained.

The judgment of the trial court is affirmed.

MR. CHIEF JUSTICE PRINGLE not participating.