Irma L. KAPUSHION, personal representative of the Estate of William G. Kapushion, Plaintiff-Appellee,

v.

COLORADO WEST PACKERS, INC., Defendant-Appellant.

No. 82CA1079.

Colorado Court of Appeals, Div. II.

Jan. 24, 1985.

Rehearing Denied Feb. 21, 1985.

Certiorari Denied June 24, 1985.

Hall & Evans, Gary R. Cowan, Colorado Springs, for plaintiff-appellee.

Dufford, Waldeck, Ruland, Wise & Milburn, Joseph Coleman, Grand Junction, for defendant-appellant.

SMITH, Judge.

Defendant, Colorado West Packers, Inc. (Packers), appeals from a judgment awarding William Kapushion $158,234.13 for cattle, feed, transportation costs, and commissions arising from his services as cattle broker and plant manager for Packers. Irma Kapushion was substituted as appellee on the death of William Kapushion. We affirm.

Packers was the owner and operator of a Grand Junction, Colorado, meat processing and packing plant. From December 1970 until early 1978, Kapushion purchased livestock for Packers under an informal agreement which provided that he would pay the cost of livestock, feed, and transportation and would then bill Packers for his costs plus a commission of 50 cents per hundredweight of livestock. Because Packers frequently was unable to pay Kapushion's invoices promptly, a large obligation accumulated to Kapushion.

In May 1976, to memorialize a portion of the debt which Packers owed Kapushion, the directors of Packers executed a promissory note payable to Kapushion in the amount of $100,000 bearing 10% interest. In November 1976, Packers' plant manager resigned and Kapushion assumed this function under an agreement that he would receive 25 cents per hundredweight of cattle passing through the plant. There was conflicting testimony as to whether the 25 cents per hundredweight commission was to be in addition to, or in substitution for, the previous 50 cents per hundredweight commission on livestock purchased by Kapushion, but Kapushion's invoices reflected that the commissions were cumulative.

In April 1978, Kapushion brought suit for the outstanding balance owed by Packers. In August 1978, Packers paid the $100,000 principal of the 1976 promissory

note, which amount represented a portion of the amount sought by Kapushion.

At trial both parties agreed that there was a balance due Kapushion. Accountants representing each party testified as to their estimates of this outstanding balance. However, efforts at calculating this sum were hampered by poor record keeping on the part of both Kapushion and Packers. At the conclusion of trial, the court entered judgment for Kapushion in the amount of $158,234.13 for the unpaid balance of the commissions owed plus the interest still due on the promissory note.

### I.

On appeal, Packers first contends that the trial court erred in failing to deny Kapushion's recovery on the grounds that the transactions giving rise to the debt were in violation of the Packers and Stockyards Act, 7 U.S.C. § 181 et seq. (1982).

While we agree that both Packers and Kapushion in many particulars did not strictly comply with the Act and with the regulations promulgated pursuant to the Act, see 9 C.F.R. § 201 (1984), there is no authority for the proposition that Congress intended the Act to abrogate the contractual relations of packers and buyers who are not in strict compliance with the Act. The primary purpose of the Act was to prevent monopolistic practices by meat packers. *Mahon v. Stowers,* 416 U.S. 100, 94 S.Ct. 1626, 40 L.Ed.2d 79 (1974). Since no allegation has been made that Kapushion and Packer's non-compliance with the Act had any monopolistic effect or reflected any improper intent, the trial court did not err in determining their respective contractual rights and liabilities.

### II.

Packers contends next that Kapushion's status as an officer and a director of Packers during the period in question imposed upon him the duty to account as a fiduciary for all amounts received by him from Packers for his services as a buyer. Again, we disagree.

A director of a corporation may contract with the corporation, notwithstanding the fiduciary duty owed the corporation, provided that the contract is accompanied by full and fair disclosure of all material facts, it is entered into honestly and in good faith, and it results in no advantage to the director at the expense of the corporation. *Rosenthal v. Four Corners Oil & Minerals Co.,* 157 Colo. 136, 403 P.2d 762 (1965). *See Swafford v. Berry,* 152 Colo. 493, 382 P.2d 999 (1963); *see also O'Malley v. Casey,* 42 Colo.App. 85, 589 P.2d 1388 (1979).

Here, Packers was a small and closely held corporation, the articles of incorporation expressly sanctioned contracts between a director and Packers, and Kapushion's purchases, far from being secret or isolated events, were the source of almost all of the cattle processed by Packers from the date of its incorporation through 1978. The controversy between Kapushion and Packers arose not from allegations that there was any lack of good faith, that Kapushion acted fraudulently, or that the purchaing agreement was inherently unfair, but rather it stemmed solely from a dispute as to the exact amount owed to Kapushion pursuant to the agreement. Under these circumstances, Kapushion was obligated to do no more than establish his claim under the contract by a preponderance of the evidence.

### III.

Packers' final contention is that the trial court's judgment is erroneous because of various arithmetic and accounting errors. Again, we disagree.

The trial court's task was to reconstruct, as best it could, the voluminous financial transactions between Kapushion and Packers based upon the poorly kept records of each. Each party was permitted to and did offer testimony by its own accountants as to the amount of the final balance between the parties. This testimony was in hopeless conflict. However, the trial court considered all the evidence and arrived at what

628

it believed to be the correct figure. The ultimate amount of the judgment was within the range of figures given in the testimony. Where, as here, there was competent evidence to support the trial court's judgment, we will not substitute ourselves as the trier of fact. *See Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979).

Judgment affirmed.

BERMAN and VAN CISE, JJ., concur.