Chinyun KIM, Plaintiff–Appellant,

v.

The GROVER C. COORS TRUST; William K. Coors; Jeffrey H. Coors; The Adolph Coors, Jr. Trust; The May Kistler Coors Trust; John H. Mullin; James K. Peterson; John Hoyt Stockey; and John D. Beckett, Defendants–Appellees.

Nos. 04CA0583, 04CA1203.

Colorado Court of Appeals, Div. V.

March 8, 2007.

Certiorari Denied Sept. 11, 2007.

Fisher, Sweetbaum & Levin, P.C., Alan D. Sweetbaum, Denver, Colorado; Chitwood Harley Harnes, LLP, John F. Harnes, Great Neck, New York, for Plaintiff–Appellant.

Davis, Graham & Stubbs, LLP, Thomas C. Bell, Janette L. Ferguson, Denver, Colorado, for Defendants–Appellees The Grover C. Coors Trust, William K. Coors, Jeffrey H. Coors, The Adolph Coors, Jr. Trust, and The May Kistler Coors Trust.

Holme Roberts & Owen, LLP, James C. Ruh, Nadia Ann Sarkis, Denver, Colorado, for Defendants–Appellees John H. Mullin, James K. Peterson, John Hoyt Stockey, and John D. Beckett.

Opinion by Judge HAWTHORNE.

In this shareholders' suit, plaintiff, Chinyun Kim, appeals the trial court's judgment finding against Kim and in favor of defendants, the Grover C. Coors Trust, William K. Coors, Jeffrey H. Coors, the Adolph Coors, Jr. Trust, the May Kistler Coors Trust, John H. Mullin, James K. Peterson, John Hoyt Stockey, and John D. Beckett (collectively Coors), and the trial court's order awarding costs and expert witness fees to Coors. We affirm the judgment of the trial court, vacate its order awarding costs and expert witness fees to Coors, and remand this case for further proceedings consistent with this opinion.

### I. Background

At the time of the transaction involved in this case, Kim owned shares of common stock in Graphic Packaging International Corp., Inc. (GPK), and Jeffrey H. Coors, William K. Coors, John H. Mullin, James K. Peterson, John Hoyt Stockey, and John D. Beckett were directors of GPK. Mullin, Peterson, Stockey, and Beckett were independent directors. Jeffrey Coors was CEO of GPK, and the Coors family, prior to the transaction involved in this case, owned forty-seven percent of the common stock of GPK and exercised control over GPK.

This case began with GPK's acquisition of Fort James Corporation's folding carton assets in 1999. To acquire the Fort James assets, GPK entered into a credit agreement requiring it to pay back $525 million of its debt in one year or less. Initially, GPK intended to pay a large portion of this short-term debt utilizing funds earned from the sale of a paperboard mill. However, the sale fell through, and GPK, facing a substantial payment, had to look for alternatives.

Eventually, GPK decided to raise revenue by selling 1,000,000 shares of convertible preferred stock to the Grover C. Coors Trust (Trust) for $100 million. Jeffrey Coors and William Coors were both trustees of the Trust in addition to being directors of GPK.

GPK's management formed a special committee made up of the independent directors on GPK's board to evaluate this transaction. Members of the special committee met in 2000 on July 6, July 28, August 2, and August 14. They also obtained a fairness opinion from Solomon Smith Barney indicating that the transaction was fair to the corporation. The special committee approved the transaction during their August 14 meeting, finding that it was fair to GPK and its shareholders.

Following the sale, Kim filed suit individually, and on behalf of similarly situated shareholders, alleging that the directors breached their fiduciary duties in approving the transaction. Kim requested a declaration that GPK's directors breached their fiduciary duties, rescission of the sale, and damages attributable to the GPK directors' breach.

The trial court found that the transaction was fair to GPK and the public shareholders and that GPK's directors did not breach their fiduciary duties. The court also awarded Coors costs in the amount of $328,238.35. This appeal followed.

### II. Standing

Coors argues that Kim lacks standing to pursue a claim for damages against the board of GPK. We disagree.

Generally, a shareholder may not assert a personal action against a director who acts in a manner that damages the corporation. *Nicholson v. Ash*, 800 P.2d 1352, 1357 (Colo.App.1990). However, a shareholder may maintain a personal action if the director's conduct violates a duty to the shareholder and causes him or her injury that is not suffered by other shareholders. *Nicholson, supra.*

Here, the trial court found:

The gravamen of plaintiff's complaint is individuals and trusts related to or associated with the Coors family manipulated the transactions briefly summarized above in such a manner as to dilute the value and voting rights of minority shareholders while simultaneously increasing the ownership and value of their own shares. The alleged injury, by definition, was not suffered by all or even most other shareholders.

■ We agree. Kim's complaint alleges injury based upon his status as a noncontrolling shareholder and derived from the actions of members of the Coors family who controlled GPK. His alleged injury is therefore not common to all shareholders, and if he prevailed on the merits of his claim, under his theory, he would be entitled to damages distinct from damages to the corporation itself. *See, e.g., Sec. Nat'l Bank v. Peters, Writer & Christensen, Inc.,* 39 Colo.App. 344, 569 P.2d 875 (1977) (preferred shareholders had standing to challenge actions of common shareholders which accrued exclusive benefit to common shareholders at preferred shareholders' expense).

Therefore, we conclude that the trial court properly found that Kim has standing to pursue a claim for damages against the board of GPK.

### III. Burden of Proof

Kim contends that the trial court erred in assigning to him the burden of proving the transaction was unfair. We conclude any error was harmless.

■ In Colorado, the burden of proof in a civil case generally rests upon the party asserting a claim, and it does not shift. *Judkins v. Carpenter,* 189 Colo. 95, 537 P.2d 737 (1975); *Eads v. Dearing,* 874 P.2d 474 (Colo. App.1993). However, in cases involving a director's dealings with the corporation, the burden of proof is on the director to demonstrate that the transaction took place in good faith, was fair to the corporation, and was accompanied by full disclosure. *Rosenthal v. Four Corners Oil & Minerals Co.,* 157 Colo. 136, 143, 403 P.2d 762, 766 (1965); *see also Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939); *Laybourn v. Wrape,* 72 Colo. 339, 343, 211 P. 367, 369 (1922); Christa K.M. de la Garza, *Conflict of Interest Transactions: Fiduciary Duties of Corporate Directors Who Are Also Controlling Shareholders,* 57 Den. L.J. 609, 633 (1980) ("the evidential burden of proof, including the burden of coming forward and the burden of persuasion, as to the good faith of the transaction and its inherent fairness to the corporation and the stockholders is also placed upon the director or the majority shareholder").

■ Here, the trial court utilized the standard burden of proof for Colorado civil cases, finding that Kim had the initial burden of proof to set forth a prima facie case, at which point Coors had the burden of going forward with evidence, though Kim retained the ultimate burden of proof. However, the court also found that even if the burden of proof were placed on Coors to demonstrate fairness, the outcome of the case would not change.

We agree with the trial court that the outcome of the trial would be the same regardless of which side bore the burden of proof. Thus, we conclude that even if the trial court erred in placing the burden of proof on Kim, such error was harmless because it did not "substantially influence[ ] the outcome of the case" or impair "the basic fairness of the trial." *Flanders Elec. Motor Serv., Inc. v. Davall Controls & Eng'g,* 831 P.2d 492, 496 (Colo.App.1992). Because the error did not affect a substantial right of the parties, we must disregard any error. *See* C.R.C.P. 61.

Kim's reliance upon *Atlantic & Pacific Insurance Co. v. Barnes,* 666 P.2d 163 (Colo. App.1983), is misplaced. In that case, improper allocation of the burden of proof was not a harmless error because the evidence weighed equally. Because the burden of proof imposed by the court was a preponderance of the evidence, the misallocation of the burden of proof affected the outcome. *See Atl. & Pac. Ins. Co., supra,* 666 P.2d at 165–66.

Here, the court found that Coors would prevail whether Kim or Coors had the burden of proof. Thus, the allocation of the burden of proof, even if erroneous, did not determine which party would prevail.

Therefore, we conclude that even if the trial court erred in placing the burden of proof on Kim, that error was harmless.

### IV. Fairness of the Transaction

Kim contends that the trial court erred in determining that the transaction was fair to GPK and its shareholders. We disagree.

## A. Fairness and Fiduciary Duties

In Colorado, both the directors of a corporation and the shareholders that exercise control over a corporation are considered fiduciaries. *See, e.g., Kullgren v. Navy Gas & Supply Co.*, 110 Colo. 454, 135 P.2d 1007 (1943) (directors); *Glengary Consol. Mining Co. v. Boehmer*, 28 Colo. 1, 62 P. 839 (1900)(controlling shareholders). Fiduciary duties require directors and controlling shareholders to act with loyalty toward the corporation, and with an "extreme measure of candor, unselfishness, and good faith." *Kullgren, supra*, 110 Colo. at 461, 135 P.2d at 1010. The fiduciary duties of a director or controlling shareholder are equivalent to the "high standard of duty required of trustees." *Kullgren, supra*, 110 Colo. at 461, 135 P.2d at 1010. Thus, a contract between corporations that have common directors is voidable if a court finds it to be unfair. *Colo. Mgmt. Corp. v. Am. Founders Life Ins. Co.*, 145 Colo. 413, 359 P.2d 665 (1961); *see also River Mgmt. Corp. v. Lodge Props. Inc.*, 829 P.2d 398 (Colo.App.1991)(noting that parties to a contract must deal with one another fairly and in good faith).

Despite the restrictions imposed by their fiduciary duties, directors are not prohibited from doing business with the corporation or even from making a profit. *Swafford v. Berry*, 152 Colo. 493, 382 P.2d 999 (1963). A contract between a director and the corporation is valid if it is "accompanied by full and fair disclosure of all material facts, it is entered into honestly and in good faith, and it results in no advantage to the director at the expense of the corporation." *Kapushion v. Colo. W. Packers, Inc.*, 701 P.2d 625, 627 (Colo.App.1985); *see also Monroe v. Scofield*, 135 F.2d 725, 726 (10th Cir.1943)(transaction valid where director's dealings are "honest, aboveboard, and to the benefit of the corporation").

Colorado's corporation code provides that a conflicting interest transaction will not "be void or voidable or be enjoined, set aside, or give rise to an award of damages or other sanctions" in a shareholder proceeding if the "transaction is fair as to the corporation." Section 7–108–501(2)(c), C.R.S.2006.

Colorado's code is modeled after the Model Business Corporation Act. *Pueblo Bancorp. v. Lindoe, Inc.*, 63 P.3d 353, 368 (Colo.2003). Because the provisions of § 7–108–501(2)(c) are similar to the provisions of § 8.61(b)(3) of the Model Business Corporation Act, that act's official comment is persuasive when determining the meaning of "fair as to the corporation." Section 7–108–501(2)(c); 2 Model Business Corporation Act Annotated § 8.61 (3d ed. 1997 Supp.). "Fair" in § 8.61(b)(3) "accords with traditional language in the cases," and "the term has a special, flexible meaning and a wide embrace." 2 Model Business Corporation Act Annotated, *supra*, § 8.61 comment.

Kim argues that § 7–108–501(2)(c) does not govern this case because in addition to being a director of GPK, Jeffrey Coors is also a controlling shareholder, and as a director of GPK and a trustee of the Trust, he stood on both sides of the transaction. However, this type of transaction is contemplated by § 7–108–501(2)(c), which governs transactions in which a director has a conflict of interest. The statute does not exempt transactions from its coverage when they involve directors who are also controlling shareholders.

Even if we assume this transaction is not covered by § 7–108–501(2)(c), Kim does not dispute that such a transaction is valid so long as it is fair to the corporation and the shareholders. Thus, we examine whether the trial court erred in finding that the transaction was fair.

## B. Fairness Analysis

Whether a transaction is fair depends on the facts and circumstances of each particular case. 3 William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 919, at 501 (perm. ed.2002); de la Garza, *supra*, 57 Den. L.J. at 635. In most jurisdictions, the test for fairness in cases involving both interested director and controlling shareholder transactions "is whether or not under all the circumstances the transaction carries the earmarks of an arm's length bargain." *Pepper, supra*, 308 U.S. at 306–07, 60 S.Ct. at 245; 18 C.J.S.

*Corporations* § 320 (1990); 19 C.J.S. *Corporations* § 507 (1990).

Under this approach, courts may consider several factors, including "whether the corporation received full value in the transaction, whether the transaction was in the corporate interest, whether the corporation needed and was able to finance the transaction, whether the interested director or officer siphoned off corporate gain, and whether there was full disclosure." 3 Fletcher, *supra,* § 919, at 502; *see also* 19 C.J.S. *Corporations* § 507 ("[t]o be binding the transaction must, generally, be beneficial to or in the interests of the corporation, or at least not detrimental to it; and the consideration passing from a director to the corporation must adequately compensate the corporation"); directors must also fully disclose all relevant material facts); 2 Model Business Corporation Act Annotated, *supra,* § 8.61 comment (in determining fairness, courts may consider the terms of the transaction, the benefit to the corporation, and the process of the decision, including whether a director failed to disclose his or her interest or exerted improper influence on other directors).

In determining whether a transaction is fair, Colorado courts have examined the transaction as a whole. *See, e.g., River Mgmt. Corp., supra,* 829 P.2d at 405. In doing so, they have emphasized one or more of the following five factors: whether (1) the transaction was accompanied by a full and fair disclosure of the material facts to the shareholders; (2) the transaction was attended by fraud; (3) there was adequate consideration for the transaction; (4) the transaction benefited the corporation; and (5) directors siphoned corporate benefits. *See Van Schaack Holdings, Ltd. v. Van Schaack,* 867 P.2d 892 (Colo.1994) (director of a closely held corporation has a duty to disclose material facts when purchasing stock of minority shareholders); *Rosenthal, supra* (lack of adequate disclosure of director's interest in transaction constitutes breach of fiduciary duty); *Swafford, supra,* 152 Colo. at 498, 382 P.2d at 1002 (holding that a fair "transaction must be accompanied by a full and fair disclosure of the material facts to those who are shareholders ... and

it must not be attended with unfairness or fraud," and that directors did not breach their fiduciary duties where they realized no secret profit); *Hudson v. Am. Founders Life Ins. Co.,* 151 Colo. 54, 377 P.2d 391 (1962) (director's issuance of stock without disclosing any information constituted breach); *Kullgren, supra* (transaction unfair where directors of Navy benefited at the expense of the corporation by exchanging eighteen shares of stock worth $90,000 for fifty shares of stock in Grand, a company that Navy already owned and controlled); *River Mgmt. Corp., supra,* 829 P.2d at 405 (failure to disclose information about contract to appraiser and inadequate consideration for stock constituted breach of fiduciary duty and unfair dealing with minority shareholder); *Sec. Nat'l Bank, supra* (failure to disclose or provide notice of meeting to shareholders and dealing at expense of preferred shareholders constituted constructive fraud as a matter of law); *see also* de la Garza, *supra,* 57 Den. L.J. at 638 (arguing that disclosure, fraud, and adequate consideration can be used to determine whether a director has met his or her burden of proving that a transaction is fair). Nevertheless, these are not the only factors a court may consider when determining whether a transaction is fair.

Kim urges us to adopt Delaware's "entire fairness" test, which focuses on the fairness of the process and the price. *See Kahn v. Lynch Commc'n Sys., Inc.,* 638 A.2d 1110, 1115 (Del.1994). That test is as follows:

The concept of fairness has two basic aspects: fair dealing and fair price. The former embraces questions of when the transaction was timed, how it was initiated, structured, negotiated, disclosed to the directors, and how the approvals of the directors and the stockholders were obtained. The latter aspect of fairness relates to the economic and financial considerations of the proposed merger, including all relevant factors: assets, market value, earnings, future prospects, and any other elements that affect the intrinsic or inherent value of a company's stock. However, the test for fairness is not a bifurcated one as between fair dealing and price. All aspects of the issue must be examined as a

whole since the question is one of entire fairness.

*Kahn, supra,* 638 A.2d at 1115 (quoting *Weinberger v. UOP, Inc.,* 457 A.2d 701, 711 (Del.1983)).

■ However, we are unable to discern any functional difference between the majority, Colorado, and Delaware approaches. All three approaches require the court to look at the transaction as a whole and to determine whether it is fair. We conclude the test for whether a transaction is "fair" is whether "under all the circumstances [it] carries the earmarks of an arm's length bargain." *See Pepper, supra,* 308 U.S. at 306–07, 60 S.Ct. at 245.

■ Whether a transaction is fair is a question of fact, and a trial court's finding that a transaction is fair will not be disturbed if it is supported by competent evidence in the record. *See Swafford, supra; River Mgmt. Corp., supra.*

Here, the trial court considered the transaction as a whole and made detailed findings of fact in support of its ultimate determination that the transaction was fair. Thus, we now determine whether the trial court's findings are supported by the record.

### C. Trial Court's Findings Regarding Fairness

■ Kim argues that the transaction was unfair for several reasons. We address and reject each argument in turn.

#### 1. Best Price

Kim first argues that the transaction was unfair because the directors failed to obtain the best price available for the convertible preferred stock. We disagree.

The trial court found that "there was no evidence that a better price was in fact available," meaning that the directors not only sought, but obtained the best available price. This finding is supported by testimony from Mullin that he did not think GPK could have sold the convertible preferred stock to a third party, that GPK could not have gotten better terms from a third party, and that if the Trust had not been "willing to step up

and put additional equity in" GPK, nobody else would have done so. It is also supported by testimony from Coors' expert Beckman that the convertible preferred stock would not have sold on the public market.

#### 2. Disclosure

Next, Kim argues that the transaction was unfair because Jeffrey Coors failed to disclose material information to the independent directors who approved the transaction. We disagree.

The trial court found that because of the time pressures involved, the independent directors were not fully informed when they approved the transaction. However, the trial court did not find that there was a failure to disclose any material information to the independent directors or to the shareholders. To the contrary, the court found the information was available but that the special committee did not have time to review all of it.

The record supports the court's findings. Mullin testified that he discussed the negotiations and terms of the preferred sale, as well as the state of the business, with GPK's Chief Financial Officer Burnham, and that he and Burnham had several telephone conversations. He also testified that he had an opportunity to review Solomon Smith Barney's fairness opinion and supporting documentation before the August 14, 2000 meeting, and that there was no information the special committee needed but lacked.

Stockey testified that he received information about the transaction, that he discussed using a pre- or post-announcement price to determine the value of the stock, and that before the July 28, 2000 meeting, he received materials including the suggested terms of the transaction.

Peterson testified that before the August 14, 2000 meeting, he received the fairness opinion and supporting materials and had sufficient time to respond to them. Beckett testified that the transaction was at arm's length and that he relied on Solomon Smith Barney's fairness opinion.

GPK issued a press release on July 31, 2000, stating that GPK would close on $100 million in new financing on August 15, 2000,

and it issued a second press release on August 2, 2000 describing the terms of the transaction. GPK also sent a letter with similar information to shareholders.

Kim also does not explain what information the directors failed to disclose or why such information would have been material.

Accordingly, we conclude there is record support for the trial court's finding that the material information was disclosed. *See Swafford, supra* (transaction fair where shareholders knew assets of company, cost in "round figures," and number of shares transferred); *cf. Hudson v. Am. Founders Life Ins. Co., supra* (breach of fiduciary duty where company president did not disclose any information regarding transactions to directors, did not discuss transactions during board meetings, and personally issued shares of stock without board approval).

### 3. Reliance and Misunderstanding

Kim next argues that the transaction was unfair because the independent directors improperly relied upon interested parties, and because they and their negotiators misunderstood their duty to the public shareholders. We disagree.

The trial court found that due to time constraints, the special committee relied on (1) a group of negotiators, some of whom were not totally independent; (2) information prepared and presented by the Coors family, GPK's management, and Jill Sisson, who served as general counsel and corporate secretary; and (3) a fairness opinion prepared by Solomon Smith Barney, an investment banking company.

Kim cites several cases, including some from other jurisdictions, holding that directors breach their fiduciary duties by relying on parties interested in a transaction to negotiate its terms. *See, e.g., Sec. Nat'l Bank, supra* (directors who negotiated transaction to benefit themselves breached their fiduciary duties); *Mills Acquisition Co. v. Macmillan, Inc.,* 559 A.2d 1261 (Del.1989) (interested director's domination of negotiations during lockup merger skewed deal in favor of one party and against the other). We read these cases to hold that complete reliance upon interested directors to negotiate the terms of a transaction may amount to a breach of fiduciary duty, particularly where the terms of the transaction are unfair.

However, these cases do not hold that it is a breach of fiduciary duty as a matter of law where, as here, the independent directors rely on a group of negotiators, some of whom are not totally independent of the interested directors. *See Mills Acquisition Co., supra,* 559 A.2d at 1281–82 (transaction unfair when interested chief executive officer was heavily involved in negotiations and rebuffed all bids by alternative buyer).

Further, the Colorado Supreme Court has held that a transaction can be fair even when interested directors set all its terms, including the price, so long as they fully disclose those terms and do not realize a "secret profit." *See Swafford, supra,* 152 Colo. at 499, 382 P.2d at 1002.

Here, the trial court found that several factors made this an arm's length transaction. First, the court found there was no evidence that Jeffrey Coors, William Coors, Burnham, or Sisson structured the deal or negotiated to benefit the Trust at GPK's expense, and this finding is supported by the record. Stockey testified that Jeffrey Coors, despite his apparent conflict, "would leaned over backwards to make sure that the company—or have the Coors family did not get some non-market advantage, because he had consistently demonstrated that over the years." Mullin testified that Burnham was "a dead honest guy," that he realized Burnham had a fiduciary obligation to the company separate from his obligation to Jeffrey Coors, and that Burnham "negotiat[ed] the best terms he could" for the special committee. Burnham and Sisson both testified that they understood their duty to act in the best interests of all the shareholders, and there was no evidence to suggest the negotiators sought to benefit the Trust at GPK's expense.

The trial court also found the four independent directors were experienced, they took their fiduciary duties seriously, knew the danger to the company, and believed the transaction was fair to the company.

This finding is also supported by extensive testimony of the directors about their education and experience.

Each of the independent directors testified that he knew his duty was to represent all the shareholders, including the public non-controlling shareholders, and also knew the company was in bad shape financially. Mullin and Peterson testified that a bankruptcy would be bad for the public shareholders and would probably have broken GPK. Each of the independent directors expressed his opinion that the transaction at issue here was fair to the company and the public shareholders.

This evidence supports the trial court's finding that the independent directors understood their fiduciary duties, and did not ignore or disregard any class of shareholders. *Cf. Sec. Nat'l Bank, supra* (directors' actions that benefited directors as common shareholders at the expense of the preferred shareholders constituted a breach of fiduciary duty).

The trial court also found, with record support, that independent directors reasonably relied on Solomon Smith Barney because it was familiar with GPK and its problems. There was no evidence Solomon Smith Barney "fudged" its fairness opinion, and its representative McCreary served as an advocate and negotiator.

Mullin, Stockey, and Beckett testified that retaining Solomon Smith Barney was a good idea because it already knew about the company and was well qualified. All the independent directors testified that Solomon Smith Barney, through its representative McCreary, negotiated the transaction on behalf of the special committee and the public shareholders. Mullin believed Solomon Smith Barney was acting in the best interests of the shareholders, and Hoyt testified that he negotiated only with McCreary, not with Burnham or Jeffrey Coors. Burnham also testified that Solomon Smith Barney advised him regarding the transaction. Thus, contrary to Kim's argument, the record supports the trial court's finding that the independent directors did not rely on Jeffrey Coors to negotiate the transaction or on any employee "beholden" to him.

### 4. Concessions

Kim next argues that the transaction was unfair because the negotiators did not obtain any concessions. We disagree.

The trial court found that Burnham tried to negotiate the best deal possible given GPK's limited bargaining power. This is supported by Mullin's testimony that Burnham did his best to negotiate terms favorable to GPK, and that he never took a position contrary to the best interests of the shareholders.

### 5. Alternatives

Kim argues that the transaction was unfair because the directors did not seek alternative solutions. We disagree.

Under the business judgment rule, a director's exercise of judgment will not subject that director to liability when exercised in good faith. *Polk v. Hergert Land & Cattle Co.*, 5 P.3d 402, 405 (Colo.App. 2000); *Rifkin v. Steele Platt*, 824 P.2d 32 (Colo.App.1991). However, the business judgment rule does not apply to transactions in which the director has an interest. *See Rifkin, supra* (director's use of corporate funds for personal benefit).

Here, the trial court found that GPK's directors' decisions to consider and reject several alternatives were shielded from liability by the business judgment rule. The court found that the proposed alternative transactions did not involve conflicts of interest, that the decisions were made in good faith, and that there was no alternative to the transaction with the Trust.

Again, there is evidence to support the trial court's findings. With regard to the decision to sell the mill, Jeffrey Coors testified that he believed the mill would be easy to sell because of its reputation for productivity, efficiency, and quality, and that he had received several calls from interested buyers. According to Jeffrey Coors, Stockey told him that the mill would be difficult to maintain.

Jeffrey Coors also testified that GPK pursued a joint venture with Rock–Tenn and considered a joint venture with the Coors

family, but the joint venture with Rock–Tenn fell through. The company determined that a joint venture with the Coors family would be risky for GPK because it would not prevent bankruptcy.

According to Jeffrey Coors, GPK considered selling subordinated debt, but decided against it because such debt would carry a high interest rate and would be bad for the company and the shareholders. Jeffrey Coors also testified that Bank of America's subdebt experts told him GPK's subordinated debt would not be marketable.

Jeffrey Coors further testified that GPK considered selling the company or a controlling block, but decided against it because of the potential damage it would do to the company and employees, and that GPK considered restructuring its debt. However, Jeffrey Coors testified that Bank of America required validation of GPK's financial records and projections by Ernst & Young Restructuring in order to go forward with any restructuring. Jeffrey Coors said he rejected such validation because he believed it was an attempt by Bank of America to have GPK pay "2 to 3 million dollars" to protect Bank of America's interests from bankruptcy.

The trial court also found, with record support, that no other alternative was available to the directors. Coors' expert testified that he had considered all feasible alternatives and that none would have worked for GPK. Beckman testified that convertible preferred stock would not have sold in the public market. Mullin testified that no other source of equity investment was available and agreed that convertible preferred stock would not have sold.

The trial court also found no evidence in the record of bad faith by the directors, and the record supports this determination.

Accordingly, we conclude that the trial court did not err in applying the business judgment rule to GPK's directors' decision to reject alternatives in this case.

### 6.  Good Faith

Kim next contends that good faith is not a defense to his claim that the directors breached their fiduciary duties. We agree, but conclude that the trial court did not err in considering good faith as a factor in determining whether a breach of fiduciary duties occurred.

■■■■■■ Directors and controlling shareholders, as fiduciaries, must deal with the company and noncontrolling shareholders in good faith. *Kullgren, supra.* In cases involving a conflict of interest transaction, the interested director must prove that the transaction was not only fair, but also undertaken in good faith. *See Rosenthal, supra.*

■■■■ While good faith is not necessarily a defense to a claim of constructive fraud, *see Sec. Nat'l Bank, supra,* a trial court may consider whether the directors of a corporation acted in good faith when determining whether they breached their fiduciary duties, whether to apply the business judgment rule, and whether the transaction was fair. *Kullgren, supra; Kapushion, supra.*

Accordingly, we reject Kim's argument that reversal of the trial court's decision is required on this basis.

### 7.  Wallach Opinion

Kim argues that the trial court erred in relying on the Wallach opinion as evidence of fairness. We disagree.

The trial court found that if the conversion price for the stock sold to the Trust had been preset, Wallach would not have provided a fairness opinion to the Trust and the sale would not have been completed. This finding is supported by Hoyt's testimony.

### 8.  Titman's Testimony

Kim argues that the trial court erred by giving insufficient weight to Titman's testimony, by failing to notice errors in Peavy's testimony, and by accepting the testimony of Coors' experts. Kim maintains that Coors' experts valued the controlling stock of the company based on the noncontrolling stock, and applied a further discount which was improper as a matter of law. We disagree.

■■■■ "[A] trial court, as fact finder, can accept or reject all or part of any witness'

testimony." *Pueblo Bancorp. v. Lindoe, Inc.,* 37 P.3d 492, 496 (Colo.App.2001).

> The credibility of the witnesses, plus the sufficiency, probative effect, and weight of all the evidence including the documentary evidence, and the inferences and conclusions to be drawn therefrom, are all within the province of the trial court, and its treatment thereof will not be disturbed on review unless clearly erroneous.

*Cottonwood Hill, Inc. v. Ansay,* 709 P.2d 62, 64 (Colo.App.1985). Further, the trier of fact may reject unpersuasive expert testimony, even if uncontroverted. *Quintana v. City of Westminster,* 56 P.3d 1193, 1198 (Colo.App.2002).

Kim's reliance on *Pueblo Bancorporation* is misplaced. In that case, a division of this court held that it is improper to apply a minority discount in "dissenters' rights actions," pursuant to § 7–113–101, et seq., C.R.S.2006, except in "extraordinary circumstances." *Pueblo Bancorp., supra,* 37 P.3d at 498–99. The division reached its decision based upon amendments to the definition of "fair value" in the Model Business Corporation Act provisions governing dissenters' rights actions, which do not permit the use of marketability or minority discounts. *Pueblo Bancorp., supra,* 37 P.3d at 498.

However, this case is not a dissenters' rights action. It involves the question of whether a transaction was fair, not the "fair value" of dissenters' shares, and therefore, it is not governed by § 7–113–101. Accordingly, we conclude that the court did not err as a matter of law in accepting expert testimony that applied a discount in this case.

Peavy testified that it was proper to apply a discount of fifteen to twenty percent due to the stock's lack of marketability, and that applying such a discount made the $100 million price fair. Peavy denied that he discounted the price for control because Coors already had control of the company. We conclude the trial court did not err in accepting all or part of Peavy's testimony.

Kim also argues that Titman's analysis was superior to that of Beckman and Peavy because (1) it was uncontroverted that the convertible preferred stock's lowest value was $115 million; (2) Coors' experts nevertheless testified that the market value was $120 million, and then applied a further discount; (3) Peavy created assumptions out of "thin air" and used hindsight while Titman used actual historical data; (4) Peavy utilized a hypothetical cost of capital based on defense counsel's representations; (5) Beckman's opinion and Peavy's analysis were flawed and conflicted with Ryder's testimony; and (6) Peavy's application of a nineteen percent cost of debt is unsupported by the record.

We conclude Kim's arguments do not provide a sufficient reason to reverse the trial court because they essentially challenge the trial court's determination of the weight and credibility of each expert. Further, we have reviewed the record and determined that evidence in the record supports the challenged findings of the trial court, and therefore we may not disturb them. *See Swafford, supra.*

## 9. Testimony Regarding Return

Kim also challenges the trial court's finding that the rate of return to the Trust was not unreasonable. Kim argues that this finding cannot be reconciled with Titman's testimony. We are not persuaded.

Even if Titman's testimony permitted the inference that the anticipated or realized rate of return to the Trust was unreasonable, the trial court was not bound by that testimony. *See Pueblo Bancorp., supra,* 37 P.3d at 496; *Cottonwood Hill, Inc., supra.* Apparently, the court was more persuaded by Hoyt's testimony "that a 30 to 40 percent premium was in the range of appropriateness for this investment given that that is typically what private equity and what venture capital funds target for their return," and that the actual return was approximately thirty percent.

## 10. Ultimate Finding of Fairness

Kim argues that the trial court erred in finding the transaction was fair. We disagree.

The trial court considered the totality of the circumstances, including the decision-making and negotiation processes and the price of the transaction, and it concluded that the transaction was fair and that the di-

rectors did not breach their fiduciary duties. The court noted that the alternative was bankruptcy, which would have wiped out the value of GPK's stock.

We conclude the trial court's finding is supported by substantial evidence in the record, as set forth earlier.

## 11. No Finding of Constructive Fraud

Kim argues that the trial court found Coors was guilty of constructive fraud. We disagree.

In his opening brief, Kim states that "although finding defendants guilty of constructive fraud, the court awarded costs of $328,238.35." However, we have reviewed the trial court's order in its entirety, and it made no finding that Coors committed constructive fraud in this case. Accordingly, we reject Kim's argument.

## 12. No Fraud as a Matter of Law

Kim also argues that the trial court's order necessitates the conclusion that the directors committed constructive fraud as a matter of law. Again, we disagree.

 "Constructive fraud is defined as a breach of duty that the law declares fraudulent because of its tendency to deceive, violate confidence, or injure public interests." *Scott Sys., Inc. v. Scott*, 996 P.2d 775, 780 (Colo.App.2000).

Here, the court found that the directors did *not* breach their fiduciary duties to Kim and the other public shareholders, and we have concluded these findings are not clearly erroneous. Therefore, we further conclude that the directors did not commit constructive fraud as a matter of law.

## 13. Remaining Allegations of Error

Kim also argues that the trial court erred in finding that Titman's valuation implied a value of $3 per share, and in implying that Titman's valuation was inconsistent with an efficient market.

However, Kim does not describe how these alleged errors altered the outcome of the trial or rendered it unfair. Therefore, we will not consider them. *See* C.R.C.P. 61.

## V. Costs

Kim contends that the trial court erred in awarding costs without holding a hearing to determine the reasonableness of those costs. We agree.

A party that requests a hearing on the reasonableness of costs is entitled to such a hearing. *Dillen v. HealthOne, L.L.C.*, 108 P.3d 297, 302 (Colo.App.2004).

Here, Kim requested a hearing on the reasonableness of costs and expert witness fees claimed by Coors, and the trial court erred in awarding those costs and expert witness fees without first conducting an evidentiary hearing. Accordingly, we vacate the trial court's order awarding costs and expert witness fees and remand this matter for an evidentiary hearing on these issues.

The trial court's judgment is affirmed, the order awarding costs and expert witness fees to Coors is vacated, and the case is remanded for proceedings consistent with this opinion.

Judge DAILEY and Judge FURMAN concur.